Merilyn COOK, et al., Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION, a Delaware Corporation, and The Dow Chemical Company, a Delaware Corporation, Defendants.

Civ. A. No. 90–K–181.

United States District Court, D. Colorado.

Oct. 8, 1993.

Merrill G. Davidoff (argued), Berger & Montague, Bruce DeBoskey, Silver & DeBoskey, Denver, CO, for plaintiffs.

Franklin Kramer, Shea & Gardner, Washington, DC, for Rockwell.

Mark Lillie, Kirkland & Ellis, Washington, DC, for Dow Chemical.

## ORDER REGARDING CLASS CERTIFICATION

KANE, Senior District Judge.

This case is before me on plaintiffs' motion to certify two classes, a medical monitoring class and a property class pursuant to Fed. R.Civ.P. 23. Certification for the medical monitoring class is sought under Rule 23(b)(2) or, in the alternative, under Rule 23(b)(3). Certification of the property class' damage claims is requested solely under Rule 23(b)(3).

### I. *Facts and Procedural Background*

On January 30, 1990, a number of individuals, Bank Western and the Field Corporation (a subsidiary of Bank Western) (collectively, "plaintiffs") filed this putative class action. These parties live on or hold an interest in real property located near the Rocky Flats weapons production facility in northwest Denver, Colorado ("Rocky Flats"). Rocky Flats is owned by the U.S. Department of Energy. Defendant, The Dow Chemical Company ("Dow"), operated Rocky Flats from its inception in the early 1950's to June 30, 1975. Defendant, Rockwell International Corporation ("Rockwell"), operated it from the latter date to December 31, 1989. Dow and Rockwell are collectively referred to as "defendants."

Class plaintiffs are fourteen individuals and business entities who sue on behalf of and seek certification of two classes, a medical monitoring class and a property class. Plaintiffs allege that during their operation of Rocky Flats, Dow and Rockwell released radioactive and non-radioactive substances into the surrounding area which damaged their property and could have adverse impacts on their health. In their second amended complaint, plaintiffs request class certification and plead claims under Colorado common law, the Price Anderson Act (which incorporates common law), 42 U.S.C. §§ 2014(hh), 2210, and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607. Their identical common law and Price Anderson claims sound in negligence, strict liability, private nuisance, and outrageous conduct. They seek damages on these claims for property and other economic harm, mental and emotional distress and medical monitoring, plus exemplary damages. They request response costs under CERCLA.

### II. *Certification of the Medical Monitoring Class and Property Class*

#### A. *General Principles*

■ In determining whether the plaintiffs' cause of action is suitable for determination on a classwide basis, the provisions of Rule 23 must be followed. *McCarthy v. Kleindienst,* 741 F.2d 1406, 1412 n. 6 (D.C.Cir. 1984). Whether a class may be certified is in the discretion of the court. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193,

2200, 68 L.Ed.2d 693 (1981). "[A]n inquiry into the merits of the claims of the representative or the class is inappropriate when making the decision whether the action should be certified under Rule 23." 7A Charles A. Wright et al., *Federal Practice and Procedure* § 1759 at 99 (1986); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1970); *Redditt v. Mississippi Extended Care Centers, Inc.*, 718 F.2d 1381, 1387–88 (5th Cir.1983); *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 637 (D.Colo.1986). A court is obliged to determine only whether the requirements of Rule 23 have been satisfied. *See Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). On the other hand, in determining whether the requirements of Rule 23 have been met, it is often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses. *See Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149, 157 (W.D.Mo.1977). However, there is a distinction between identifying the issues that the case will present for purposes of determining whether the requirements of Rule 23 have been met and deciding those issues on the merits. *See id.*

"A court has broad discretion in deciding whether to allow the maintenance of a class action." 7B Wright, *supra* § 1785 at 119; *see also Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Certification is not irreversible and may be altered or amended as the case progresses towards resolution on the merits. Fed.R.Civ.P. 23(c)(1), 23(c)(4)(B); *Joseph*, 109 F.R.D. at 638; *see also* 7B Wright, *supra* § 1785 at 128. This power to change the class certification decision has encouraged many courts to be quite liberal in certifying a class when that decision is made at an early stage, noting that the action always can be decertified or the class description altered if later events suggest that it is appropriate to do so. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968), *cert. denied* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *see also* 7B Wright, *supra* § 1785 at 131.

The party invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class action procedure have been satisfied. *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975); *Spivak v. Petro–Lewis Corp.*, 120 F.R.D. 693, 695 (D.Colo.1987); 7A Wright, *supra*, § 1759 at 102. In order for this action to be maintained as a class action, plaintiffs must first establish that the four requirements of Fed.R.Civ.P. 23(a) are satisfied. These requirements are: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These requirements are often referred to as numerosity, commonality, typicality, and adequacy of representation.

Second, plaintiffs must establish that the case fits within one of the three subcategories of Rule 23(b). In the present case, plaintiffs seek certification for a medical monitoring class under Rule 23(b)(2) or, in the alternative, under Rule 23(b)(3) and certification for a property class under Rule 23(b)(3). Under subsection (b)(2), plaintiffs must establish that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Under subsection (b)(3), Plaintiffs must establish that the questions of law and fact common to the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy (superiority).

Bearing in mind these general principles, each of the prerequisites to class certification is considered below to determine whether each has been met in respect of the two classes for which plaintiffs seek certification.

## B. *The Requirements of Rule 23(a)*

### 1. *Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." To satisfy the requirements of Rule 23(a), plaintiffs must first adequately define each class and then establish that each class is so numerous that joinder of all members is impracticable.

 In determining whether the proposed class meets Rule 23(a)'s numerosity requirement, I must first determine whether the class is sufficiently defined so that potential class members can be identified. *Joseph,* 109 F.R.D. at 638; *see also Rodriguez v. Bar–S Food Co.,* 567 F.Supp. 1241, 1247 (D.Colo.1983). However, the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. *Ashe v. Board of Elections in the City of New York,* 124 F.R.D. 45, 47 (E.D.N.Y.1989); 7A Wright, *supra* § 1760 at 117. "If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." 7A Wright, *supra* § 1760 at 118; *see also Alliance to End Repression v. Rochford,* 565 F.2d 975, 977–78 (7th Cir.1977). However, the requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. *Rodriguez v. U.S. Department of the Treasury,* 131 F.R.D. 1, 7 (D.D.C.1990); *Joseph,* 109 F.R.D. at 639.

Plaintiffs propose the following definition for the medical monitoring class: "All natural persons residing or having resided during the operating history of Rocky Flats within the boundaries of the Medical Monitoring Class Area." (Pl.'s Mem.Supp.Mot.Cl.Certif. at 22.) The "Medical Monitoring Class Area" is defined with reference to geographical representations of exposure or dose levels (alluding to exposure to plutonium and volatile organic compounds ("VOCs")) received by segments of the exposed population, known as "dose or exposure contours". Dose or exposure contours are depicted geographically as lines ringing Rocky Flats and, according to plaintiffs, correspond to average minimal cumulative doses received by the population living within a particular contour over time. The medical monitoring plaintiffs do not allege personal injury resulting from exposure to releases from Rocky Flats, nor do they purport to seek damages for past, present or future injury. Rather, they seek diagnostic testing and medical screening "to promote the early detection and prevention of cancer and other latent diseases." Plaintiffs estimate that there are 43,361 persons living within the medical monitoring class area according to the 1990 census.

Plaintiffs seek to define the property class as: "All Persons and entities owning an interest (including mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries." (*Id.* at 23.) The "Property Class Area" is defined with reference to geographical representations of the area bounded by the plutonium contour and the complaint supplies the operative date of ownership as June 7, 1989 (*See* Second Am.Compl. ¶ 85). The property class seeks damages for diminution of property values, interference with use and enjoyment of the land, and discomfort and annoyance to the landowners. Plaintiffs allege that there are approximately 15,370 parcels of property, of which an estimated 13,364 are residential properties and, of the remaining parcels, approximately 1766 belong to the vacant land use category.

Dow and Rockwell have criticized the definitions of the medical monitoring class and property class as overbroad as to area and have criticized the plutonium and VOC dose or exposure contours which are tied to average exposure. Rockwell also criticizes the definitions as overbroad as to time, in including in the medical monitoring class all persons who lived within the defined contours "during the operational history of the Rocky Flats" and in the property class all current owners of an interest in real property (with certain exclusions). The medical monitoring class definition includes any person who lived

in these areas between 1952 and 1989, for however brief their period of residence. Rockwell argues that, without a durational limit on class membership, many persons would be included in the class who are not entitled to recover because they were not sufficiently exposed and that identifying and contacting persons who lived in the area for relatively short periods of time would prove to be considerably difficult. Rockwell also extensively addresses the issue of medical monitoring and argues that medical monitoring claims are unsuitable for class certification.

The objections of Dow and Rockwell are addressed to the merits of plaintiffs' claims. In essence, defendants argue that the classes should not be certified because the definitions are so broad as to include persons who cannot sustain the burdens of claim for relief sought by the classes as a whole. However, to evaluate issues such as the appropriateness of plutonium and VOC dose or exposure contours, the absence of durational limit on class membership and the suitability of the remedy of medical monitoring would necessitate a preliminary hearing on the merits as part of the class certification determination. Such preliminary hearing is not authorized by Rule 23 and was expressly repudiated by the Supreme Court in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). *See also Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982); 7B Wright, *supra* § 1785 at 125–27. As was pointed out in *Boggs v. Divested Atomic Corp.*,

> Although the parties have submitted a great deal of factual material, and defendants argued the facts of the case at length, there are relatively few facts that are crucial to class certification. Essentially, the facts can be subdivided into two categories: Those relating to class definition (that is, evidence that something occurred to distinguish the members of the class from the general public), and to class size. The balance of the issues raised by this motion are primarily, if not completely, legal ones.

141 F.R.D. 58, 60 (S.D.Ohio 1991).

The Court's approach in *Boggs* is in point here. The two relevant questions to be addressed with regard to class definition are: (1) is there evidence that hazardous radioactive or non-radioactive substances were discharged beyond the borders of Rocky Flats, and (2) if so, have those substances travelled beyond the boundaries of the "Medical Monitoring Area" and "Property Class Area" as defined by plaintiffs? *See id.* at 61.

The parties agree that, from time to time, hazardous radioactive and non-radioactive materials have escaped beyond the borders of Rocky Flats. Defendants downplay the significance of the releases, however; they do not deny them. Thus, for purposes of this class action motion, there is preliminary evidence that radioactive and non-radioactive materials have left Rocky Flats.

Additionally, plaintiffs are required to justify the definitions of the classes. As noted in *Boggs*: "Although the class definition is subject to refinement based upon further development of the record, there should be some evidence at this stage of the case that plaintiffs' definition is reasonable. This requires an examination of plaintiffs' evidence of the dispersion of hazardous emissions." *Id.* at 61–62. In his declaration, plaintiffs' expert, Dr. Jan Beyea, acknowledges that "[t]hese estimates of dose and exposure are preliminary and are likely to be refined and adjusted as further information is obtained during the course of discovery." (Decl. Dr. Jan Beyea ¶ 4.) Defendants' argument against the estimates is not focused on the fact of dispersion of hazardous radioactive and non-radioactive substances, but on the amount and effect of dispersion of such substances. Defendants, relying on their experts' declarations, argue that the dispersion of the materials to class members attributable to the plant are minimal and not significant enough to cause either a reasonable risk of health effects or any loss of property value.

Although these amounts are perceived by defendants as minimal, it appears that persons living within the medical monitoring area, i.e. the plutonium and VOC dose or exposure contours, and properties located within the property class area, i.e. the plutonium contour as defined by plaintiffs, can

reasonably be said to have been exposed to some hazardous radioactive and non-radioactive materials originating inside the boundaries of Rocky Flats. These persons can thereby be differentiated from more distant members of the public. This is unlike *Daigle v. Shell Oil Co.*, where the court found that plaintiffs had "failed to identify any logical reason ... for drawing the boundaries where they did." 133 F.R.D. 600, 603 (D.Colo. 1990). Individual members of the classes still will be required to submit evidence concerning their particularized damage claims in the trial on the merits of the action. Therefore, I find that plaintiffs' choice of the plutonium and VOC contours to define class members bears a reasonable relationship to the evidence of record at this point, and that the definitions of both the medical monitoring class and the property class are sufficiently definite to permit analysis of the Rule 23 factors governing class certification.[1]

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required. *See Arkansas Educ. Ass'n v. Board of Educ. of Portland*, 446 F.2d 763, 766–67 (8th Cir.1971). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1990).

As regards the size of the two classes, plaintiffs estimate that there are 43,361 persons living within the medical monitoring class area, according to the 1990 census, and 15,370 parcels of land in the property class area. The court's remarks in *Boggs* are pertinent here: "Although plaintiffs' counsel may be required at some point and for purposes of giving notice, not only to determine the precise size of the class but the names and addresses of all the members, it is sufficient for certification purposes to conclude that the class numbers in the thousands and there is some geographic dispersion of class members. Factually both elements are present here." 141 F.R.D. at 62.

Rockwell does not allege specifically that plaintiffs have not satisfied the numerosity requirement. Contrary to Dow's assertions, the fact that the classes may initially include persons who do not have claims or who do not wish to assert claims against Defendants is not important at this stage of the litigation, unless it can be shown that most, if not all, of the potential class members have no claims to be asserted by the class representatives. *Joseph*, 109 F.R.D. at 639. There is no evidence that most of the potential class members have no claims against Defendants and Dow's assertion that only this single lawsuit, involving only fifteen persons, is pending, does not prove otherwise. The potential classes in this case number in the thousands and, following the above general principles, joinder of all members in a single lawsuit would be impracticable. Therefore, I find that the required numerosity showing has been made.

### 2. *Commonality*

■ Rule 23(a)(2) provides that a class may be maintained only if "there are questions of law or fact common to the class." This does not require that all the questions of law or fact raised by the dispute be common; nor does it establish any quantitative or qualitative test of commonality. *Joseph*, 109 F.R.D. at 640. "Unlike Rule 23(b)(3),

---

1. In their reply brief, plaintiffs address the issue of whether there should be a minimal durational requirement of residence for members of the medical monitoring class. Plaintiffs state: "After consultation with our experts, the best we can say is this: it currently appears unlikely that a one-year duration-of-residence requirement would exclude many claimants with significant exposures. Any more stringent requirement could run the risk of excluding numerous persons with meritorious claims." Because of the tentative nature of this estimate, and the absence of direct expert evidence in this regard, I do not rule that a durational residency requirement be included in the definition of the medical monitoring class at this time. As discovery proceeds, if clarity is reached concerning the estimated time that a class member would have to have lived in the medical monitoring area for there to have been a sufficient amount of exposure to warrant medical monitoring, I may exercise my powers under Rule 23(c) to alter or amend the definition of the medical monitoring class.

which also requires that such common questions predominate over individual questions, the existence of significant common legal or factual issues is enough to satisfy Rule 23(a)(2)'s threshold commonality requirement." *Boggs*, 141 F.R.D. at 64. Plaintiffs have identified common questions of law and fact. Common questions include whether defendants' operation of Rocky Flats involved an ultrahazardous activity, premising strict liability, and posed an unreasonable risk of harm, constituting negligence, and/or amounted to interference with the use or enjoyment of property constituting a nuisance. Defendants argue that proof with respect to the foregoing would vary from class member to class member because each claimant lived in the area at different times and would have been affected in a different way by operations of either Dow or Rockwell which varied over time. With these differences, defendants claim that the commonality requirement cannot be met.

However, although Dow and Rockwell may have operated the plant at different times and there may have been differing amounts of releases of hazardous substances affecting different individuals at different times, this does not negate that there are some questions of law or fact common to the two classes. In *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir.1988), a class was certified for personal injury and property damage for persons near a landfill after chemicals leaked into a water supply. There, the court noted:

"In mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next. No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."

*Id.* at 1197. Moreover, the existence of more than one defendant does not defeat class certification. *See, e.g., Boggs*, 141 F.R.D. 58 (where the court certified a class of plaintiffs in an action against different defendants who operated the Portsmouth Gaseous Diffusion Plant at different times.) Conceivably, the court may, as the action proceeds, exercise it's authority under Rule 23(c)(1) and Rule 23(c)(4) to amend its order with regard to class certification before the decision on the merits to allow class treatment for only some of the issues or to divide the original classes into subclasses and treat each subclass as a class. I find that plaintiffs have satisfied the threshold requirement of commonality.

### 3. *Typicality*

The third prerequisite in Rule 23(a) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); *Joseph*, 109 F.R.D. at 640. The positions of the named plaintiffs and the potential class members do not have to be identical. "Thus, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class." 7A Wright, *supra* § 1764 at 235–41.

Plaintiffs contend that their property and medical monitoring claims arise from the same course of conduct by defendants at Rocky Flats and that they share common legal and remedial theories with the members of the classes. Rockwell attempts to dispute typicality of the claims of plaintiffs Bank Western and Field Corporation, who seek damages for impairment of their security in two tracts of land being held for future development, currently in their possession following defaults by the borrowers. Applying the above stated principles, even though some of the facts underlying each person's claims may vary, these factual differences do not create any conflict between plaintiffs and

the potential class members. The claims arise from the same set of circumstances, the release of hazardous nuclear and non-nuclear substances from the plant during its operation by Dow and Rockwell.

■ Rockwell also denies typicality based on its position that the bank plaintiffs will be subject to a statute of limitations defense. However, such a contention cannot serve to bar a class certification in that an inquiry into a claimed affirmative defense impermissibly allows an issue going to the merits of the litigation to intrude upon the class certification analysis required by Rule 23. *Rishcoff v. Commodity Fluctuations Sys., Inc.*, 111 F.R.D. 381, 382 (E.D.Pa.1986); *Fickinger v. C.I. Planning Corp.*, 103 F.R.D. 529, 532 (E.D.Pa.1984).

■ Dow further challenges typicality on the ground that claims based on exposure, risk, and contamination require individual proof that will vary with each claimant. However, as the court noted in *In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D.Pa.1984), differences in the situation of each plaintiff or each class member do not necessarily defeat typicality. "While the focus is on the relatedness of the named plaintiffs' claims and those of the class members, the harm suffered by the named plaintiffs may differ in degree from that suffered by the other members of the class so long as the harm suffered is of the same type." *Id.* at 430.

I find that plaintiffs' claims are typical of those of the classes they seek to represent. Again, the court may, as the action proceeds on the merits, exercise its authority under Rule 23(c)(1) and Rule 23(c)(4) to amend its order with regard to class certification before the decision on the merits to allow class treatment for only some of the issues or to divide the original classes into subclasses and treat each subclass as a class.

### 4. *Adequacy of Representation*

■ Rule 23(a)(4) provides that a class action can be maintained only if "the representative parties will fairly and adequately protect the interests of the class." What constitutes adequate representation is a question of fact that depends on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir.1981). Criteria for assessing adequacy of representation include whether the plaintiff has common interests with the class members and whether the representative will vigorously prosecute the interests of the class through qualified counsel. *Day v. NLO, Inc.*, 144 F.R.D. 330, 334 (S.D.Ohio 1992). The plaintiff has the initial burden to show facts to support a finding that it will adequately protect the interests of the class. 2 Robert Newberg, *Newberg on Class Actions*, § 7.24 at 7–80 to –81 (3d ed. 1992).

In most cases, adequate representation presumptions are usually invoked in the absence of contrary evidence by the party opposing the class. On the issue of no conflict with the class, one of the tests for adequate representation, the presumption fairly arises because of the difficulty of proving negative facts. On the issue of professional competence of counsel for the class representative, the presumption fairly arises that all members of the bar in good standing are competent. Finally, on the issue of intent to prosecute the action vigorously, the favorable presumption arises because the test involves future conduct of persons, which cannot fairly be prejudged adversely.

If there are any doubts about adequate representation or potential conflicts, they should be resolved in favor of upholding the class, subject to later possible reconsideration, or subclasses might be created initially.

*Id.* at 7–81 to –82 (citations omitted).

Dow challenges the adequacy of those named plaintiffs who have already been deposed based on their deposition testimony regarding their understanding of the nature of their claims. Dow further maintains that claims that the named plaintiffs might have already are subject to dismissal based on the statute of limitations. First, Dow's arguments are essentially addressed to the merits of plaintiffs' claims, and therefore, must be reserved for a later determination of the case on the merits. Secondly, plaintiffs have asserted claims both typical of the other class

members, and subject to typical defenses. There is no allegation of other factors which make plaintiff representatives antagonistic to or in conflict with the objectives of those they purport to represent. "[I]f there is more than one named representative, it is not necessary that all the representatives meet the Rule 23(a)(4) standard; as long as one of the representatives is adequate, the requirement will be met." 7A Wright, *supra* § 1765 at 277. To date, defendants have not deposed all named plaintiffs nor have defendants challenged the competence of plaintiffs' counsel. A factor in determining the vigor of representation is the representatives' resources to investigate class claims and to contact other class members. *Boggs,* 141 F.R.D. at 66; *see also Bowen v. General Motors Corp. A.C. Spark Plug Div.,* 542 F.Supp. 94, 100–02 (N.D.Ohio 1981). Dow repeatedly states that plaintiffs' counsel have pursued a number of class actions. Apparently, they are qualified to prepare the case for trial and to try it.

I find that the named plaintiffs adequately represent the interest of the class as a whole and that the requirements of Rule 23(a)(4) have been satisfied.

## C. *The Requirements of Rule 23(b)*

### 1. *The Requirements of Rule 23(b)(2) (Medical Monitoring Class)*

■ Plaintiffs seek the court's injunctive powers "in shaping an integrated, class-wide medical monitoring program" and, accordingly, request certification of the medical monitoring class under Rule 23(b)(2). This rule provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief."

Courts have differed in their responses to requests for certification of medical monitoring claims in the form of injunctive relief. As Dow has noted, many decisions classify medical monitoring costs as an item of damage, the traditional remedy at law. *See Ball v. Joy Technologies, Inc.,* 958 F.2d 36, 39 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992); *Hag-*

*erty v. L & L Marine Servs., Inc.,* 788 F.2d 315, 319 (5th Cir.1986). Such classification appears more appropriate where plaintiffs merely seek the costs of medical monitoring from plaintiffs. Here, however, the plaintiffs seek relief similar to that sought in *Day v. NLO, Inc.* Plaintiffs in *Day* requested the court to "establish an elaborate medical monitoring program of its own, managed by court-appointed court supervised trustees, pursuant to which a plaintiff is monitored by particular physicians and the medical data utilized for group studies." 144 F.R.D. at 335. The district court in *Day,* relying on authorities such as *Werlein v. U.S.,* 746 F.Supp. 887 (D.Minn.1990), and *Barth v. Firestone Tire & Rubber Co.,* 661 F.Supp. 193 (N.D.Cal.1987), held that, in such circumstances, the relief constitutes injunctive relief as required by Rule 23(b)(2). *Id.* at 335.

In *In re NLO, Inc.,* 5 F.3d 154 (6th Cir. Sept. 17, 1993), the circuit court upheld the *Day* court's reasoning and denied defendants' mandamus petition challenging class certification under Rule 23(b)(2). The court noted that, "although none of the cases relied upon by the district court specifically hold that medical monitoring claims are cognizable under Rule 23(b)(2), they generally support the proposition that such relief is injunctive in nature." *Id.* at 159.

Dow argues that Rule 23(b)(2) requires that the ongoing conduct of the defendant be the subject of the relief that is being sought and that, since neither Dow nor Rockwell now conduct operations at Rocky Flats and plaintiffs do not seek to enjoin any conduct by Dow or Rockwell, the action should not be classified under Rule 23(b)(2). To the contrary, injunctive relief embraces all forms of judicial orders, whether they be mandatory or prohibitory. *See* 7A Wright, *supra* § 1775 at 457–458; *see, e.g., Bolton v. Murray Envelope Corp.,* 553 F.2d 881, 885 (5th Cir. 1977). Moreover, the *Day* Court did not regard the lack of ongoing conduct on the part of defendants as a factor mitigating against granting injunctive relief under Rule 23(b)(2). There the court was considering the claims of *former* employees, independent contractors and business invitees of a feed materials production facility against the op-

erators of the facility alleging that the *former* operators negligently or intentionally exposed them to dangerous levels of radioactive and hazardous materials.

Dow further argues that any injunctive relief will not apply to the class as a whole because of the individualized nature of each individual's claim. However, common evidence would be required to establish the level and nature of injury or disease by substances released from Rocky Flats and the causal connection, if any, between the release of the substances and any injuries or disease allegedly sustained. Therefore, despite the fact that there would be some issues of individual proof, injunctive relief in the form of medical monitoring would seem appropriate to the class as a whole.

 Class members in an action where a class has been certified under (b)(2) do not have the option of opting out of the class and a judgment will be binding and will have a *res judicata* effect as to the whole class. However, where a class has been certified under (b)(3), class members may opt out of the class and, a judgment will not have a *res judicata* effect on those who elect to do so. When class certification is validly sought in the alternative under Rule 23(b)(2) and (b)(3), a mandatory (b)(2) class is preferred. *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir.1973); *see also* 7A Wright, *supra* § 1775 at 491–92. Therefore, I find that plaintiffs have satisfied the requirements of Rule 23(b)(2) and that the medical monitoring class be certified under that rule.

### 2. *The Requirements of Rule 23(b)(3) (Property Class)*

Since I have determined that the medical monitoring should class be certified under Rule 23(b)(2), I consider the issue of certification under Rule 23(b)(3) only with reference to the property class. Rule 23(b)(3) authorizes a class action when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### a. *Predominance of Common Questions of Law or Fact*

In determining whether common issues predominate, some courts have held that an action can be brought under subsection (b)(3) even though there is not a complete identity relating to all class members, as long as a "common nucleus of operative facts" is present. *See Esplin*, 402 F.2d at 99; *Joseph*, 109 F.R.D. at 641.

> The common questions need not be dispositive of the entire action. In other words, "predominate" should not be automatically equated with "determinative" or "significant." Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.

7A Wright, *supra* § 1778 at 528–29.

To determine whether plaintiffs have satisfied the predominance requirement, I must first identify the relevant factual and legal issues, and the elements of the claims and defenses in the case. *Joseph*, 109 F.R.D. at 641. Plaintiffs' common law and Price Anderson claims sound in negligence, strict liability, private nuisance, and outrageous conduct. Defendants argue that with respect to each of these claims, individual questions predominate over any common questions. As defendants have pointed out, there are some questions of fact and law in this case which will require individualized proof relating to the nature and use of the different parcels of property, including the time when each plaintiff lived in the area, the duration of each plaintiff's stay in the area and possible statute of limitations defenses. On the other hand, plaintiffs have demonstrated that this case presents many common issues of law and fact, including whether the operation of Rocky Flats constitutes an ultrahazardous activity; whether defendants exercised reasonable care to prevent the release of hazardous radioactive and nonradioactive materials from Rocky Flats; what materials were released, in what quantities; what caused the releases; what precautions to avoid emissions were taken; whether the geographic dispersion of the releases in the surrounding

environment was reasonably foreseeable; and whether defendants engaged in intentional, reckless, willful, or wanton conduct. These common issues represent the core of plaintiffs' action against defendants and to the extent that the claim of each plaintiff depends upon proof concerning these common issues, it would serve no purpose to force multiple trials to hear the same evidence and decide the same issues. As I remarked in *Joseph,* "[w]ere plaintiffs to bring separate actions, these questions would necessarily be relitigated over and over, and the same evidence would be presented in each case." 109 F.R.D. at 642.

Therefore, I find that, as concerns the property class, a common nucleus of operative facts exists and that the common questions of law and fact predominate over those issues requiring individualized proof.

### b. *Superiority of the Class Action*

The last prerequisite for class certification under Rule 23(b)(3) is that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Rockwell proposes an alternative method of adjudication, namely, the filing of individual claims by plaintiffs, which can then be consolidated under Fed.R.Civ.P. 42(a) and, after discovery has proceeded, the possibility of the court selecting a "bellwether" plaintiff or group of plaintiffs to further litigate the claims. However, this would subject each plaintiff to expensive and duplicative discovery and would, no doubt, lead to discrepancies in court findings in the various cases, even at the pre-trial stage. Relitigation or repetitive discovery of the same core issues would be grossly inefficient and wasteful of the resources of the parties and the courts. Therefore, I find that litigating the issues concerning the property class as a class action would be superior to any other method of adjudication.

To defer certification of the proposed classes pending further development of the factual and expert record would not serve judicial economy. Moreover, Rule 23(c)(1) provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." As the action proceeds, I may exercise my powers under Rule 23(c) to alter or amend my decision regarding the certification of the medical monitoring class and/or the property class or to divide these classes into subclasses. If individual questions arise during the course of litigation, which render the action unmanageable, I have the power at that time to dismiss the class action and permit each plaintiff to proceed only on behalf of himself or herself. With these considerations in mind, I find that plaintiffs have established the prerequisites for certification of the property class under Rule 23(b)(3). Accordingly,

IT IS ORDERED THAT Plaintiffs' motion for class certification is GRANTED.