Sheldrake v. Skyline Corp., No. S1269-01 Cncv (Katz, J., Mar. 29, 2004)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT
Chittenden County, ss.:



ROGER and HOLLY SHELDRAKE

v.

SKYLINE CORPORATION


ENTRY


This action began in 2001 when plaintiffs Roger and Holly Sheldrake sought relief from injuries and damages sustained as a result of purchasing a mobile home manufactured by defendant Skyline. Plaintiffs now seek to certify a plaintiff class, under the present action against Skyline, consisting of all individuals and entities who have purchased a

1

Skyline Manufactured Home in New England. Defendant opposes plaintiffs' class certification motion and claims that it would be improper to expand the present action to join such a large and amorphous group.

Roger and Holly Sheldrake purchased a Skyline mobile home in 1995 from Lafonds Auto, an independent Skyline distributor. Following its purchase and installation by Lafonds, the Sheldrakes claim to have experienced a number of structural problems. These problems include: ice build-up on the roof, inadequate blocking and anchoring of the home, leaking ceiling, leaking skylight, electrical problems, rotting roof, and clogged drains. (Pl. Compl. at ¶ 10). Plaintiffs contend that these problems and defects come from the inferior construction, materials, and design of Skyline homes. (Pl. Compl. at ¶ 11). Such defects, according to the plaintiffs, are endemic to Skyline homes, which make the plaintiffs part of a larger class of plaintiffs who through the act of buying a Skyline home have suffered damages for which Skyline is liable. Id. Plaintiffs limit this class to New England in part because Skyline has a Vermont manufacturing center. (Pl. Compl. at ¶¶ 1, 13). Plaintiffs contend that Skyline homes are particularly unsuited for New England climates and that the marketing and sale of these homes in New England was misleading and constitutes consumer fraud. (Pl. Compl. at ¶¶ 5, 22–25, 37–44).

From these factual allegations plaintiffs allege five claims on behalf of the class against Skyline. They claim: 1) That Skyline misled New England consumers by selling defective mobile homes unsuited to New England, thereby violating the Vermont consumer fraud statute, 9 V.S.A. § 2453. (Pl. Compl. at ¶¶ 73–79); 2) That the defective design and

manufacture of the mobile homes breach Vermont's implied warranty of merchantability, 9 V.S.A. § 2-314. (Pl. Compl. at ¶¶ 80–83); 3) That the home owners manual Skyline gives to each new home buyer creates an express warranty which Skyline breached. (Pl. Compl. at ¶¶ 84–87); 4) That Skyline negligently supervised the independent dealers who sell and install the mobile homes. (Pl. Compl. at ¶¶ 88–92); and 5) That Skyline was negligent for selling their mobile homes in New England. (Pl. Compl. at ¶¶ 93–96).

In response to plaintiffs' allegations of liability affecting the class, Skyline points out the following germane facts. First, Skyline manufactures several different models of mobile homes that vary in design, manufacture, and components. (Def. Opp'n to Pl. Mot. for Class Certification, May 15, 2002, at 18–20). These homes can very widely and are made up of dozens of smaller sub-components manufactured or installed by various subcontractors. Id. Some homes sold in New England are actually manufactured in Ohio and Pennsylvania. Id. at 19. The home owners manual on which Sheldrakes base their express warranty was not delivered until after the homes were sold and delivered. Id. at 22. Finally, the dealers/agents, such as Lafond, are independent of Skyline, and while they receive training, they are not supervised on sale pitches or installations. See Id. at 3–5, 24.

**Preliminary Standards Surrounding Rule 23**

Historically, Class actions come from the joinder rules that chancery courts developed to justify joining large groups of plaintiffs and defendants.

3

<u>George v. Town of Calais</u>, 135 Vt. 244, 245 (1977). As part of the legacy from equity, class actions, even in their modern Rule 23 incarnation, are governed by concerns for fairness and practical necessity. They are equally limited in application by the awareness that their use compromises the principles and rules of due process and equality inherent in the standards governing parties and more traditional joinder. See generally 7A C. Wright et al., Federal Practice and Procedure § 1751 (1986). Since 1938, class certifications have been governed by the modern rules of civil procedure under Rule 23. <u>Id</u>. at §§ 1752 & 1753. In Vermont, V.R.C.P. 23 has echoed the federal rule in language and purpose. V.R.C.P. 23 (Reporter's Note). Under this rule, all class actions must meet five initial requirements on which plaintiff, or party asserting the class, has the burden of persuasion. Nevertheless, it is important to underscore the equitable origins of this rule, since the determinations under Rule 23 are fact dependant and require us to consider the equity of creating or denying a class. As such, we have broad discretion on the issue of class certification and must ultimately be persuaded that justice requires the normal structure of due process to be compromised in order to enhance economy and fairness. See, e.g., <u>Sanneman v. Chrysler Corp.</u>, 191 F.R.D. 441, 445 (E.D. Pa. 2000).

As part of the rules of civil procedure for Vermont state courts, V.R.C.P. 23 is a rule of limited use that only applies in clear circumstances. See <u>George</u>, 135 Vt. at 245 ("[C]lass actions are intended to be of limited and special application, not to be casually resorted to or authorized."). This warning accompanying V.R.C.P. 23 mirrors the federal courts' wariness in applying the F.R.C.P. 23 too liberally. <u>Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A.</u>, 55 F.R.D. 26, 30 (S.D.N.Y. 1972). Even while some

4

federal courts have emphasized a liberal application of Rule 23 in certain circumstances, see, e.g., <u>Korn v. Franchard</u>, 456 F.2d 1206, 108 (2d Cir. 1972) (emphasizing the liberality of applying Rule 23 in securities litigation), the burden remains substantial, and the Sheldrakes must persuade us that the application of Rule 23 is both necessary and appropriate. Beyond such similarities, state courts are often more reluctant than their federal courts to embroil themselves in multistate litigation. See 7B C. Wright et al., Federal Practice and Procedure § 1782 at 61 (1986) (noting that some state court procedural systems discourage class actions in consumer contexts). We, like any other state court, are reluctant to make judicial decisions that will be binding on out-of-state individuals who are not party to the litigation and who may have little or no connection to Vermont. We are similarly disinclined to create a situation where we would be forced to apply the law of other states to a case where the outcome will affect so many who never sought a Vermont venue. See A. Miller & D. Crump, <u>Jurisdiction and Choice of Law in Multistate Class Actions after *Phillips Petroleum Co. v. Shutts*</u>, 96 Yale L.J. 1, 69–70 (1986) (advocating the denial of certification in state courts where there are management problems or similar procedural barriers since such forums lack the tools of the federal courts such as national venue provisions). It is with these additional concerns in mind that we understand <u>George</u> to provide us with guidance in applying V.R.C.P. 23. <u>George</u>, 135 Vt. at 245.

To qualify for class certification under Rule 23, the plaintiffs must satisfy four elements under Rule 23(a): Numerosity, Commonality, Typicality, and Ability of plaintiffs to represent the class. If plaintiff satisfies all four of these elements, then they must satisfy one of three

5

elements listed under Rule 23(b).  Plaintiffs in this case have argued for class certification solely under Rule 23(b)(3).

## Application of Rule 23(a)

The four requirements under  V.R.C.P. 23(a) are not particularly onerous.  As one court described the application of Rule 23(a), "[I]t is not uncommon for clearly non-frivolous class action suits to meet the criteria of Rule 23(a).  What separates the wheat from the chaff is the fact that once a court finds that the threshold criteria . . . have been satisfied, Rule 23(b) must be reckoned with."  Kuhn v. Skyline Corp., 1984 WL 62775, at *3 (M.D. Pa. 1984) (unpublished decision).  While we find that the critical issues in this present case lie in the preliminary considerations of class and the requirements of  Rule 23(b), we believe that for reasons of structure and form that a brief Rule 23(a) analysis is useful.  For the following Rule 23(a) analysis we proceed on the supposition that plaintiffs' class would exist as essentially defined by Sheldrakes' complaint.

For class certification, plaintiffs must first show that the proposed class "is so numerous that joinder of all members is impracticable." V.R.C.P. 23(a)(1).  The requirement of numerosity in this case has not been directly challenged by the defendants in this case since the plaintiffs' proposed class would, if certified, "number at least in the thousands."  (Pl. Mot. for Class Certification, Mar. 21, 2002, at 5).  Such a class would be quite impractical for joinder.  The plaintiffs must next show that "there are questions of law or fact common to the class."  V.R.C.P. 23(a)(2).  The test for commonality is not a particularly high one and requires plaintiffs to

6

prove neither a quantitative or qualitative levels of commonality.  See, e.g., Upper Valley Ass'n for Handicapped Citizens v. Mills, 168 F.R.D. 167, 170 (D. Vt. 1996).  At this early juncture, significant legal and factual commonality are enough.  Plaintiffs' claim of commonality rests on their claim that the defendants defectively designed their mobile homes and breached their warranties to the plaintiff class.  (Pl. compl. at ¶¶ 69–70). From proof of these common issues, plaintiffs could establish at the very least a standard of care for the negligence claims, the existence of an express warranty, the basic facts of what a merchantable mobile home should be, and any general marketing program that Skyline created in New England. Despite the conflicting individual facts of damages, causation, breach, and reliance that would differ for each individual plaintiff, the plaintiffs establish commonality to our satisfaction of this initial stage.

The third requirement of Rule 23(a) is that the plaintiffs show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  V.R.C.P. 23(a)(3).  Again, this is a low hurdle that requires plaintiffs' claims not to be markedly different from the class.  Geisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985).  Through their complaint, plaintiffs claim to have suffered damages from the failure of their mobile home.  While this claim is susceptible to defenses such as the statute of limitations and comparative negligence, these defenses would be available in many if not most claims of this nature.  Under this reasoning, we find that the plaintiffs meet the requirements of typicality. There is, however, a strong argument that the statute of limitations issue makes the Shledrakes at odds with most of the class.  It is foreseeable that any certifiable class would have to exclude any member whose claims are

7

precluded by the various statute of limitations in play under these claims. Defendants have a serious question about whether these claims were filed within the statute of limitations (six years elapsed between Sheldrakes purchase of the mobile home and their initiation of litigation, which at the very least may disqualify any implied warranty claims which must be commenced within four years. 9A V.S.A. § 2-725. This may eventually create antagonism between Sheldrakes and the plaintiff class within the statutory time frame, but this issue is better addressed under the Rule 23(b) analysis and cannot be determinative at this stage of the litigation since the statute of limitation issue has not been decided. Still, the problem is disturbing to Sheldrakes' claim of typicality and indicative of the general weakness of this proposed class since plaintiffs have not made any attempts to address the statute of limitations problem or its impact on the definition of the broader class. At this juncture, however, plaintiffs' claim of typicality satisfies the minimum of the rule.

The final requirement of Rule 23(a) is that the plaintiffs show that they "will fairly and adequately protect the interests of the class." V.R.C.P. 23(a)(4). There are always questions of whether it is the plaintiffs or their attorneys who drive a class action and whether the plaintiffs are knowledgeable about the claims of class members. The requirements of Rule 23(a)(4) at this preliminary stage, however, have primarily been concerned with the competence of the plaintiff and counsel and the lack of an antagonistic interest to the class. Kuhn v. Skyline Corp., 1984 WL 62775, at *3 (M.D. Pa. 1984). To analyze the antagonism of this requirement, we must go to the heart of the controversy where there is a danger that the representative plaintiff's interest go against the class. See

generally 7A C.Wright et al., Federal Practice and Procedure § 1768 (1986) (discussing cases where antagonism has been found between the representative).  Sheldrakes claim liability and damages from Skyline from the manufacture and sale of a defective and misleadingly marketed mobile home product.  There is nothing from this to conclude that any part of their proposed class would not want damages from being mislead or sold a defective product.  Unless plaintiffs' position shifted or further evidence came to light, they have both motive and adequate counsel to pursue this action.  We find that plaintiffs satisfy Rule 23(a)(4).

## Class Definition Concerns

Any preliminary finding that plaintiffs' proposed class would satisfy the requirements of Rule 23(a) ignores the larger question of whether Sheldrakes' proposed class can be said to coherently exist.  Although not specified in the rule, the existence of the class is a standard preliminary question for certification.  7A C. Wright Federal Practice & Procedure § 1760 at 115 (1986) (calling the existence of a class a "necessary prerequisite").  This is a question of fact dependant on the circumstances of each case.  Id.  Plaintiffs in this present case propose to certify a class composed of anyone who affirmatively answers the question, "Have you acquired a Skyline Home in New England?"  (Pl. Reply in Support of their Mot. for Class Certification, July 3, 2002, at 2).  New England, as defined by plaintiffs includes Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, and New York.  (Pl. Compl. at ¶ 1).  According to the plaintiffs, this will create a class that will share the same claims of consumer fraud, breach of implied warranty, breach of express warranty,

9

negligent supervision, and negligence, as the named plaintiffs. (Pl. Compl. at ¶¶ 73–100). The essence of plaintiffs' allegations, however, comes down to the central claim that the defendants misrepresented their product as a quality house suitable for New England when it was not. (Pl. Compl. at ¶¶ 29, 31, 32, 59).

The problem with this class is that New England, as defined by plaintiffs, encompasses a broad geography, whose climates and conditions vary from one area to the next. Long Island and Cape Cod, for example, have climates affected by the Gulf Stream which give them seasons and precipitation rates that are more akin to the mid-Atlantic region than even such nearby cities such as Boston and Hartford. Buffalo and Rochester, notorious for their huge snowfalls, rarely suffer the cold snaps of northern Maine where temperatures drop below freezing in November and stay there. We find it instructive that the plaintiff's New England region encompasses over eight zones of plant hardiness on the United States Department of Agriculture's map. See U.S. Dep't of Agri., Plant Hardiness Zone Map (1990), available at http://www.usna.usda.gov (mapping plant hardiness based on average minimum temperatures). While there are regions of greater climactic disparity (although mostly in the western in mountain ranges), the average minimum temperatures in the plaintiffs' proposed New England region vary over 45 degrees from 35 degrees below zero to 10 above.

Furthermore, this disparity has little to do with political borders and everything to do with geography and wind currents. This is a serious question for defining the class. Should Skyline homeowners who live in

temperate parts of New England be considered part of the same class as those who live in colder or more extreme regions?  Is a mobile home that is defective in Franconia, New Hampshire equally defective in New Haven or Binghamton?  It seems that a mobile home buyer on Cape Cod would have a different set of requirements and expectations than a buyer in Milton, Vermont.  To credit the Cape Cod buyer with the same knowledge and expectations as the Milton buyer, would be as irrational and arbitrary as crediting a Virginia purchaser with the same knowledge and expectations.  The premise that a home is equally defective for use in Newport, Rhode Island as it is Orono, Maine is likewise flawed.  This is to say nothing of the differences in marketing, local distributors, model of mobile home selected, or individual modifications made on the house that would affect the defendants' liability.  Without getting into the merits of the plaintiffs' claims, their proposed class is based on an oversimplified criteria that dissolves under closer scrutiny.

This is not to say that a workable plaintiffs' class does not exist, but it would require greater subtlety to establish a workable class of plaintiffs who have enough in common with the named plaintiffs to justify classification.  The Sheldrakes have even failed to propose a time limitation to the class based on the statute of limitations.  Neither have they proposed any separation between the classes in regards to the issue of damages.  Cf. Kuhn v. Skyline, 1984 WL 62775, at *1 (M.D. Pa. 1984) (proposing four classes to encompass different permutations of those who have and have not suffered damages).  The Kuhn case is particularly instructive in this situation since it deals with the same defendant and a proposed plaintiff class of mobile home purchasers or residence complaining of a single

11

problem, formaldehyde exposure. <u>Id</u>. Despite limiting the plaintiff class to one state and creating different classes based on potential damage exposure, Judge Rambo expressed the problems with the proposed class that mirror some of the same problems with the Sheldrakes' proposed class. Judge Rambo wrote,

> There is a disturbing amount of imprecision and some inconsistency in the manner in which plaintiffs have designated and/or defined the various classes. The court notes that there are questions concerning appropriate statutes of limitations and their impact on class membership; questions regarding and [sic] closing dates affecting class membership; concerns as to whether class membership should be limited to owners or residents or both; questions concerning the membership of owners who have already sold their homes; and various other loose ends which would need to be tied up.

<u>Id</u>. Although Judge Rambo did not find this enough to preclude certification on this issue, we find these lingering questions, when coupled with the additional defects in the Sheldrake's class definition, to be more than enough to render their proposed class overbroad and indefinite. Merely ordering the plaintiffs to refine their class definition will not reduce these fundamental problems that really come from the individual nature of negligence and warranty claims. Since the proposed plaintiffs encompass a climatically diverse area, represent seven states with very different laws governing consumer rights and liability, have purchased a number of different models from a number of different retailers who have also

12

performed the installation, and have suffered different levels of damages, we find that there would inherently be members of the proposed plaintiffs' class whose interests would be antagonistic to the named plaintiffs and would create a class insufficiently homogenous. Hagans v. Wyman, 527 F.2d 1151, 1154 (2d Cir. 1975). We further reject the plaintiff's motion for class certification on this lack of a definite and homogenous class.

## Application of Rule 23(b)

Assuming for the sake of argument that the Sheldrakes could cobble together a definite class and satisfy the requirements of Rule 23(a), they could not satisfy the stricter requirements of Rule 23(b), which works as the true flood gate of Rule 23. Kuhn v. Skyline Corp., 1984 WL 62775, at *3 (M.D. Pa. 1984). Since plaintiffs have limited their motion to Rule 23(b)(3), we will only review this section of the rule. Rule 23(b)(3) states that to certify a class we must find "that the questions of law or fact common to the class predominate over any questions affecting only individual members and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy." V.R.C.P. 23(b)(3). Germane to these findings are:

> "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular

13

forum; (D) the difficulties likely to be encountered in the management of the class action.  Id.

Rule 23(b)(3) asks two questions: do common issues predominate in the class and is the class action the superior vehicle?  We find the answer to both questions to be no.

## Predominance

The question of predominance of common facts and law over individual ones has been interpreted to require plaintiffs to prove "sufficient cohesiveness to warrant adjudication by representation".  Anchem Prod. v. Windsor, 521 U.S. 591, 623 (1997).  Mere commonality or typicality that would satisfy Rule 23(a)(2)&(3) will not satisfy predominance.  Id.  The Sheldrakes' claim to predominance centers on a "common nucleus of facts" based on Skyline's conduct toward the proposed class.  (Pl. Mot. for Class Certification, Mar. 15, 2002, at 14).  The Sheldrakes focus on claims of misleading representations and poor quality of the mobile homes but also poor installation that they argue are necessary facts for every class member to prove and that such proof will establish the first count of consumer fraud that they claim.  (Pl. Reply Memo. in Support of their Mot. for Class Certification, Jul. 3, 2002, at 33–35).

Beginning with the Sheldrakes' claim of negligent supervision, we find that the individual issues greatly outweigh any common issues that litigation would resolve.  First, the very subject of Skyline's supervision is a series of independent dealers that have a range of experience and

14

competence in selling and installing mobile homes.  The fact that Skyline does not directly supervise these dealers or control their actions makes any claim of negligence ultimately dependant on both the facts of the individual purchase and the dealer involved.  Proof that Skyline negligently supervised Lafond does not establish negligence over all other dealers in the New England area.  Even if it were found that Skyline owed a duty to buyers to exercise more control over their independent dealers, this would still leave the issue of causation and damages.  This is to say nothing of the defenses, which would be individualized based on the relationship between Skyline and each dealer, the standing of each buyer under the statute of limitations, and any contributory defenses.

For the Sheldrakes' claims of negligence the issue is also dominated by individual questions.  While the Sheldrakes claim negligent design and manufacture, proof for either requires evidence about the model of house, the construction materials used, and the individual manufacturing that went into it.  Proof that the Sheldrakes' house had a leaky roof because of poor design does not prove that other models have the same problem, or if it was assembled poorly the inference cannot be logically carried beyond its  lot.  The item at issue in the Sheldrakes' claims are prefabricated houses.  These are not simple or fungible objects.  Some buyers may have experienced roof and electrical problems like the Sheldrakes while others had floors that rotted out too quickly or plumbing fixtures that failed.  These are individual inquiries that do not lend themselves to large scale determinations.  Any finding applicable to the class will be too general to be of any great value.  Furthermore, it will still lack any causal link, which each buyer will have to prove in addition to any specific defect not covered by this determination.

A significant portion of the Sheldrakes' claims arise out of dealer actions—even less likely to be uniform relative to the proposed class. Skyline's logical defenses of comparative negligence through misuse or modification, statute of limitations, or supervening events are all based on individual factual issues. If the Sheldrakes prove that they did not modify their roof, there is no reason to extend that finding to any other home owner short of individual findings.

To illustrate this dichotomy more clearly, it is worth comparing the Sheldrakes' claims to the claims contained within Cook v. Rockwell Int'l Corp, 151 F.R.D. 378 (D. Colo. 1993). In Cook, plaintiffs sought to certify a class for claims against the Rockwell Corporation for damages resulting from Rockwell's release of radioactive and hazardous materials into the area surrounding the Rocky Flats weapons production center. Id. at 380. The District Court certified the class because the issues of control over the hazardous material, common to all claims, was under Rockwell's control and the questions at the core of plaintiffs' cases revolved around how Rockwell cared for the material. Id. at 388–89. Three factors distinguish this claim from the current case. First, this standard was only applied to the question of property value damage, not personal or property damage. Id. at 388. Second, Rockwell was dealing with hazardous material and the issue of strict liability. Once the proper standard of care and its breach was established, the issue of causation was less important because this material was harmful and should not exist in the ground. Id. The plaintiff class was geographically limited to one state and one set of laws. Finally, causation and damages were a function of proximity and exposure, both of which could be calculated before any individuals were considered. See Id. at 388–

16

89.  As we have already discussed, the geographical composition of the Sheldrakes' proposed plaintiffs class is quite diverse.  This geographical diversity will not only affect damages and causation but arguably the standard of care owed.  Instead of a single dump site and its outward leaching, there are thousands of different homes, of different models, utilizing different materials and different subcontractors, individually built, sold in separate transactions, through separate dealers, and serviced by those individual dealers.  Rather than a hazardous material that is dangerous in any form and any concentration, we have houses whose defects are buried within design and construction details.  Instead of a simple evaluation of property value, we have a complex determination of loss and harm caused by defects linked to Skyline.  Furthermore, all of these determinations will be affected by the conflicts of state law that will not be unilaterally resolved.

The same predominance of individual issues and questions of law exist for the claims of express warranty and implied warranty.  The express warranty claimed by the Sheldrakes is essentially a contract in which Skyline promises to make certain repairs and cover certain damages.  Since it was part of the home owners manual delivered after the purchase and installation of each mobile home, it cannot be considered an express warranty under 9A V.S.A. § 2-313 since it was not part of the basis of the bargain.  Rather than getting into the merits of what exactly this "express warranty" is, it is enough to know that even if it is an actionable promise, it requires proof that it was breached.  That is, plaintiffs must prove that Skyline did not fulfill its promises in the "warranty."  This is completely an individual determination based on the individual facts concerning Skyline

17

and each plaintiff following the transaction. As for the implied warranty of merchantability, the individual questions mirror the individual concerns of the negligence claims. Under 9A V.S.A. § 2-314, plaintiffs must prove that each mobile home was unmerchantable, which means that each mobile home did not serve the purpose for what it was sold as. While each mobile home Skyline has ever sold may contain defect that would be covered by this warranty, they are most likely different and unique to the model and individual house. Furthermore, the defenses such as notice, 9A V.S.A. § 2-607(3)(a); disclaimer, 9A V.S.A. § 2-316; statute of limitations; or third-party liability are all individualized and dependent on what Skyline did with each plaintiff.

The Sheldrakes' final claim of consumer fraud suffers from similar individual issues as above. The individuality is illustrated in the Sheldrakes' brief when they compare themselves to their would-be fellow class member, the Morgans. (Pl. Reply Memo. in Support of their Mot. for Class Certification, Jul. 3, 2002, at 28–29). While the Sheldrakes seem to have relied solely on information supplied by Skyline and Lafonds, the Morgans made their decision to buy a Skyline based in part on information from the Sheldrakes and from inspection of the Sheldrakes' house. Id. This modifies the Morgans' relationship to the dealers and manufacturers since part of their decision to purchase a Skyline came from the Sheldrakes. The Morgans may rightly feel that Skyline's product has disappointed their expectations, but it is unclear whether these expectations came from promotional material or their additional knowledge. After all they inspected a Skyline home, which has since been claimed defective, and still purchased that model because they liked it. Consumer fraud is also a state

18

law driven claim that may or may not apply to the entire class depending on the choice of law analysis.  This, however, is a concern best addressed under the discussion for superiority.

## Superiority

We find this class lacks superiority.  To incorporate our previous discussion, the individual legal and factual issues involved would make the management of the class devolve into multiple lawsuits needing separate trial.  We find that the plaintiff and the class has several alternatives available if class certification is not granted.  Not the least of which is individually trying these cases.  While the Sheldrakes' damages, which they estimate to be $50,000 may not be a large amount, their claims have provisions providing attorneys fees through state and federal statute.  9 V.S.A. § 2461(b); 15 U.S.C. §§ 2310 (detailing the attorney fee provisions of the Magnuson–Moss Warranty Act).  While this may seem modest to a plaintiff's attorney with thoughts of a multi-million dollar class action dancing in her head, it is quite enough for many, and potential plaintiffs seeking representation should have no problems finding competent counsel willing to take their claim.  We also find that with so many individual issues at play that the common issues potentially resolved would not be in the best interests of plaintiffs who would want to control the entire litigation strategy since they would have to try the bulk of their claim.  This is indicative of the fact that there is no logical division to make in this case between damages and liability.  Sheldrakes are arguing that their class would resolve core issues, but it is not clear exactly what core liability issues will be resolved and such fragmentation is undesirable.  In re

Masonite Corp. Hardboard Siding Products, 170 F.R.D. 417, 426 (E.D. La. 1997).

There are also several issues concerning the conflict of laws within this class that would make the management difficult. We find that it is less than apparent which law will cover each claim since each of the seven states involved may have a different level of interest in having their law cover the transaction. Under the Restatement (Second) of the Conflict of Laws, the analysis depends on evaluating the individual factors involved in each situation and the policies underlying each state's law. See generally H. Southerland, A Plea for the Proper Use of the Second Restatement of Conflict of Laws, 27 Vt. L. Rev. 1 (2002) (noting that this area of the law can be baffling and contains hard cases that cannot be clearly resolved).

In conclusion, the class certification proposed by the Sheldrakes lacks the cohesive unity necessary for certification. It is inferior to several alternatives available to them under the rules of civil procedure. We find that the benefits of adjudicating this case as a class action are far outweighed by the problems and the resulting suspension of normal due process is not justified by the resulting class. Morover, we find that the Sheldrakes' class does not warrant abridging normal due process and its application would lower the standards of Rule 23. George v. Town of Calais, 135 Vt. 244, 245 (1977).

Based on the foregoing reasoning, we deny the Sheldrakes' motion for class certification.

Dated at Burlington, Vermont_____, 2003.

_____
Judge