Merilyn COOK, et al., Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPO-RATION, a Delaware Corporation, and The Dow Chemical Company, a Delaware Corporation, Defendants.

Civ.A. No. 90–K–181.

United States District Court,
D. Colorado.

July 29, 1998.

Bruce H. DeBoskey, Steven W. Kelly, Silver & DeBoskey, P.C., Daniel R. Satriana, Jr., Sean R. Gallagher, Hall & Evans, Denver, CO, Ronald Simon, Simon & Associates, Washington, DC, R. Bruce McNew, Taylor, Gruver & McNew, P.A., Greenville, DE, Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Merrill Davidoff, Daniel Berger, Peter B. Nordberg, Berger & Montague, Philadephia, PA, Kenneth A. Jacobsen, John D. Stoner, Christopher T. Reyna, Chimicles, Jacobsen & Tikellis, L.L.P., Haverford, PA, for Plaintiffs.

Joseph J. Bronesky, Christopher Lane, Sherman & Howard, Denver, CO, Douglas J. Kurtenbach, Kirkland & Ellis, Chicago, IL, Mark S. Raffman, Patrick M. Hanlon, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS

KANE, District Judge.

On January 30, 1990, a number of individuals, Bank Western and the Field Corporation (a subsidiary of Bank Western) (collectively, "Plaintiffs") filed this class action. These parties live on or hold an interest in real property located near the Rocky Flats weapons production facility northwest of Denver, Colorado ("Rocky Flats"). Rocky Flats is owned by the U.S. Department of Energy. The Dow Chemical Company ("Dow"), operated Rocky Flats from its inception in the early 1950's to June 30, 1975 and Rockwell International Corporation ("Rockwell") operated it from the latter date to December 31, 1989.

By order dated October 8, 1993, I certified two partially overlapping classes in this litigation, a Property Class under Fed.R.Civ.P. 23(b)(3), consisting of persons owning an interest in real property within a defined area near Rocky Flats as of June 7, 1989, and a Medical Monitoring Class pursuant to Fed. R.Civ.P. 23(b)(2), comprising persons having resided within a slightly larger area near Rocky Flats at any time from 1952 through 1989. *Cook v. Rockwell Intern. Corp. ("Cook IV")*, 151 F.R.D. 378, 389 (D.Colo.1993). I noted certification was not irreversible and might be altered or amended as the case

progressed toward resolution on the merits. *Id.* at 381.

Plaintiffs allege Dow and Rockwell, during their operation of Rocky Flats, released radioactive and non-radioactive substances into the surrounding area which damaged their property and could have adverse impacts on their health. The Second Amended Class Action Complaint (filed on April 8, 1991) seeks class certification and pleads claims under Colorado common law, the Price Anderson Act (which incorporates common law), 42 U.S.C. §§ 2014(hh), 2210, and the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607. Plaintiffs' identical common law and Price Anderson claims sound in negligence, strict liability, private nuisance, trespass, and outrageous conduct. They seek compensatory damages for the representatives and members of the Property Class; damages "in the form of a fund to finance medical monitoring services," (Second Am. Class Action Coml. at 28), or in the alternative "medical monitoring and surveillance services in the form of injunctive relief," (*id.* at 29), for the representatives and members of the Medical Monitoring Class; response costs under CERCLA; exemplary damages; permanent injunctive relief relating to making public all information necessary to alert the public to the risks posed by Rocky Flats; as well as interest, attorney fees, and costs.

Pending are Defendants' Combined Motions for Summary Judgment[1] and Decertification of the Classes (filed December 9, 1996), Class Plaintiffs' Motion for Partial Summary Judgment (filed December 12, 1996), Defendants' Motion for Summary Judgment Based on Expert Discovery (filed August 5, 1997), Defendants' Motion to Strike Plaintiffs' Experts (filed August 29, 1997), and Defendants' Motion under Rule 37(c)(1) to Preclude Testimony of Plaintiffs' Expert Witness, Dr. John Radke, based upon findings of Magistrate Judge Borchers that Plaintiffs have violated Rule 26(a)(2) (filed April 21, 1998). I grant Defendants' motion for decertification of the Medical Monitoring Class, but deny it as regards the Property Class. My rulings on the several remaining motions follow the decertification analysis.

### I. *Motion for Decertification of Classes.*

In the Order Regarding Class Certification, I discussed the general principles applicable to class certification. *See Cook IV,* 151 F.R.D. at 380–81. I examined the law and the facts and determined Plaintiffs had satisfied the requirements of Rule 23(a), namely numerosity, commonality, typicality, and adequacy of representation in respect of both classes, I certified a Medical Monitoring Class[2] under Rule 23(b)(2) (without an opt out option) and a Property Class[3] under Rule 23(b)(3) (with an opt out option). *Id.* at 382–89.

Dow and Rockwell now seek decertification of both classes. They argue, based on recent federal circuit and district court decisions

---

1. This includes Dow's motion on statute of limitations grounds and a combined motion of the Defendants on the trespass and nuisance claims.

2. The Medical Monitoring Class is defined as: "All natural persons residing or having resided during the operating history of Rocky Flats within the boundaries of the Medical Monitoring Class Area." *Cook IV,* 151 F.R.D. at 382. The "Medical Monitoring Class Area" is defined with reference to geographical representations of exposure or dose levels (alluding to exposure to plutonium and volatile organic compounds ("VOCs")) received by segments of the exposed population, known as "dose or exposure contours:" *Id.* Dose or exposure contours are depicted geographically as lines ringing Rocky Flats and, according to Plaintiffs, correspond to average minimal cumulative doses received by the population living within a particular contour

over time. Plaintiffs estimate that there are 43,361 persons living within the Medical Monitoring Class Area according to the 1990 census. *Id.*

3. The Property Class is defined as: "All Persons and entities owning an interest (including mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries." *Cook IV,* 151 F.R.D. at 382. The "Property Class Area" is defined with reference to geographical representations of the area bounded by the plutonium contour and the complaint supplies the operative date of ownership as June 7, 1989. *Id.* This area allegedly includes approximately 15,370 parcels of property, of which an estimated 13,364 are residential properties and, of the remaining parcels, approximately 1766 belong to the vacant land use category. *Id.*

denying class certification in mass tort cases and the record developed here, this case fails to satisfy any of the prerequisites of Fed. R.Civ.P. 23(a) or (b)(3). Defendants maintain it presents highly individualized claims and no single common course of conduct, destroying commonality, predominance, adequacy of representation and superiority of class adjudication. Nor, they assert, is there any "track record" of previous trials of Plaintiffs' "novel" and "immature" claims. They argue, moreover, the prevailing law holds that the Medical Monitoring Class should not be certified under Rule 23(b)(2) as such a claim is essentially a suit for damages. Finally, they submit, the class definitions are inadequate.

Once a class is certified, "the parties can be expected to rely on it and conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that in the normal course of events it will not be altered except for good cause. Sometimes, however, developments in the litigation, such as the discovery of new facts or changes in parties or in the substantive or procedural law, will necessitate reconsideration of the earlier order and the granting or denial of certification or redefinition of the class." *Manual for Complex Litigation Third* (1995), § 30.18 at 223. In the certification ruling, I addressed each of the relevant Rule 23 requirements and determined all of the Plaintiffs' claims "arise from the same set of circumstances, the release of hazardous nuclear and non-nuclear substances from the [Rocky Flats] plant during its operation by Dow and Rockwell." *Cook IV,* 151 F.R.D. at 386. Since then, in addition to extensive discovery in this case, there have been many circuit and district court decisions relating to certification of mass tort actions.

A. *Bar on Class Certification in Mass Tort Actions.*

■ Defendants argue recent Supreme Court and circuit court decisions bar class certification in mass tort cases. Their reliance on *Amchem Products, Inc. v. George Windsor,* —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) is misplaced in that it concerned the legitimacy under Rule 23 of a class-certification sought to achieve global settlement of current and future asbestos-related claims. The class proposed for certification encompassed hundreds of thousands, perhaps millions, of individuals each of whom was or some day might have been adversely affected by past exposure to asbestos products manufactured by one or more of the twenty defendant companies. The Court expressly stated it had granted review to decide the role settlement might play under existing Rule 23 in determining the propriety of class certification, *id.* at ——, 117 S.Ct. at 2247, and noted, "no settlement class is as sprawling as this one," *id.* at ——, 117 S.Ct. at 2250. This case concerns neither the role of settlement under Rule 23 nor settlement classes.

Defendants further rely on recent circuit court decisions [4] concerning mass tort cases which have found that individualized issues precluded class certification. None is a Tenth Circuit decision, nor prohibits class certification of mass torts *per se,* nor concerns a class certified in Rule 23(b)(2) (where it is not necessary to make a finding of "predominance"), nor involves claims for property damage. All five involved nationwide class actions and conflict of law problems because differing state laws would govern liability, neither of which is the case here. Moreover, "[t]hese Circuit Courts seemed to ignore the essence of Rule 23 because of their philosophical disagreement with the effects of Rule 23." *In re Telectronics Pacing Systems, Inc.,* 172 F.R.D. 271, 276 (S.D.Ohio 1997).

A further focus of Defendants is the unpublished decision in *Satsky v. Paramount Communications, Inc.,* No. 90–S–1561, slip. op. (D.Colo. March 13, 1996), a case concerning alleged contamination of the Eagle River, Colorado, downstream from the Eagle Mine,

---

4. Defendants cite *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227 (9th Cir.1996); *Castano v. American Tobacco Co.,* 84 F.3d 734 (5th Cir. 1996); *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610 (3d. Cir.), *aff'd,* —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *In re American Medical Systems, Inc.,* 75 F.3d 1069 (6th Cir. 1996); *In re Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293 (7th Cir.), *cert. denied,* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995).

and involving, *inter alia*, individual water rights issues. Judge Daniel B. Sparr determined private individual issues predominated and refused to certify a property class. Significantly, however, Judge Sparr noted: "Whether, on balance, individual issues predominate over common issues and whether the advantages of a class action outweigh the potential problems are determinations that are generally best left to the trial court." *Id.* at 24.

Defendants also cite *Ilhardt v. A.O. Smith Corporation,* 168 F.R.D. 613 (S.D.Ohio 1996), concerning a class conditionally certified including all persons in the continental United States who purchased or leased agricultural storage silos, allegedly defective in design. They assert Plaintiffs fail to respond to key substantive holdings in *Ilhardt* that the applicable law has changed and that individual issues unique to each class member present a nearly insurmountable burden on the district court. A key distinguishing issue in that case, however, is that "the Court and the jury would need to simultaneously apply [sic] the varying and inconsistent laws of more than 40 states concerning what constitutes a product defect under strict products liability," *id.* at 620.

■ There is no absolute bar to class certification in mass tort cases.[5] Nor has there been a reversal of the class certification decisions relied upon in the initial certification. As in every instance, whether class certification is appropriate depends on a consideration of the elements of Fed.R.Civ.P. 23 in the circumstances of the case. Decertifica-

tion is warranted where materially changed or clarified circumstances have been shown that would make the continuation of the class action improper. *See Williams v. DeRobertis,* 1992 WL 315201, at *1 (N.D.Ill. Oct. 23, 1992) (citing *Robin v. Doctors Officenters Corp.,* 686 F.Supp. 199, 203 (N.D.Ill.1988)); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 7.47 at 7–146 (3d ed.1992). I therefore consider whether Defendants have made such showing.

**B.** *Decertification of the Medical Monitoring Class under Rule 23(b)(2).*

■ Defendants again argue the medical monitoring claim seeks money damages, not equitable relief, and therefore cannot properly be certified as a Rule 23(b)(2) class. Under this rule, a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Fed.R.Civ.P. 23(b)(2).

I previously determined the type of relief sought here, a medical monitoring program managed by a court-appointed and court-supervised trustee under which a plaintiff is monitored by particular physicians and the medical data utilized for group studies, constituted injunctive relief. *Cook IV,* 151 F.R.D. at 387. In the initial certification opinion, I noted courts had differed in their responses to requests for certification of medical monitoring claims in the form of injunctive relief. *Id.* Relying primarily on

---

**5.** Some courts trace their reluctance to apply Rule 23 to mass exposure cases to the following statement in the *Advisory Committee Notes to 1966 Amendment to Fed.R.Civ.P. 23(b)(3)* ("Notes"): "A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways." The Notes have, however, been the subject of considerable criticism by courts and legal commentators, including the authors of the original Notes. *See, e.g.,* Bruce H. Nielson, *Was the 1966 Advisory Committee Right?: Suggested Revisions of Rule 23 to Allow More Frequent Use of Class Actions in Mass Tort Litigation,* 25 Harv.J. on Legis. 461, 461–62 (1988) (praising judges

who have certified class actions in the mass product liability context despite the admonition of Rule 23, because the notes do not recognize the practical problems inherent in bringing individual actions in mass tort litigation). A member of the Advisory Committee has stated: "I am profoundly convinced now that [saying that mass torts are inappropriate for class certification] is untrue. Unless we can use the class action and devices built on the class action, our judicial system is simply not going to be able to cope with the challenge of the mass repetitive wrong...." Herbert Newberg & Alba Conte, *Newberg on Class Actions,* § 17.07, at 17–20 (3d ed.1992) (citing Professor Charles Alan Wright, *In Re: School Asbestos Litigation* Master File 830268 (ED Pa) Class Action Argument, July 30, 1984, Tr. 106).

*Day v. NLO, Inc.,* 144 F.R.D. 330, 335 (S.D.Ohio 1992),[6] and *In re NLO, Inc.,* 5 F.3d 154, 159 (6th Cir.1993), I found the classification of such claims as damages claims was appropriate where plaintiffs merely sought the costs of medical monitoring. I further determined where, as here, Plaintiffs sought diagnostic testing and medical screening necessary to facilitate the early detection and permit the early treatment of disease, rather than damages for past, present or future injury, such relief constituted injunctive relief as required by Rule 23(b)(2). *Cook IV,* 151 F.R.D. at 387–88. Three weeks after that opinion, the Tenth Circuit ruled, albeit not in the context of class certification, where almost identical medical monitoring relief was sought for the workers of Rocky Flats, that such relief was "essentially a suit for damages." *Building & Construction Dept. v. Rockwell Int'l Corp.,* 7 F.3d 1487, 1492 (10th Cir.1993). Defendants argue medical monitoring relief cannot be considered injunctive in light of that decision.

*Building & Construction Department, AFL–CIO v. Rockwell International Corporation* was filed by the same attorneys representing Plaintiffs here, at the same time, and raising many similar claims arising out of alleged misconduct of Dow and Rockwell which exposed workers at Rocky Flats to unsafe levels of radioactive and non-radioactive hazardous substances.[7] Relief was sought in the form of a court supervised fund to finance a program of medical monitoring for the current and former employees of Rocky Flats. The court of appeals affirmed the district court decision[8] dismissing the workers' case on defendants' motion for summary judgment, finding that it was a claim for "personal injury" within the coverage of the Colorado Workmen's Compensation Act, Colo.Rev.Stat. §§ 8–42–102, 8–52–102 (1986 Repl.Vol.), and was thus barred by the exclusivity provisions of that act. Although the court did not address the issue of whether a class claim for medical monitoring could be sustained under Rule 23(b)(2),[9] it distinguished the case from those which had applied the "prudential mootness" doctrine.[10] Whereas the others had "involved a request for prospective equitable relief by declaratory judgment or injunction," *id.* at 1492, the Tenth Circuit held the suit for "the establishment of a court supervised fund to finance a program of medical monitoring for affected workers" was "essentially a suit for damages," *id.* at 1490, 1492.

In opposing the decertification, Plaintiffs do not address this pivotal decision. Instead, they rely on recent district court decisions holding that a request for a court-supervised medical monitoring program constitutes injunctive relief and is appropriately certified under Rule 23(b)(2). *See, e.g., Yslava v. Hughes Aircraft Co.,* 845 F.Supp. 705, 713 (D.Ariz.1993) (relying on *Day v. NLO, Inc.,* 144 F.R.D. at 330); *Gibbs v. EI DuPont De Nemours & Co., Inc.,* 876 F.Supp. 475, 481 (W.D.N.Y.1995).

In *Boughton v. Cotter Corp.,* 65 F.3d 823, 827 (10th Cir.1995), the Tenth Circuit iterated the test for certification under Rule 23(b)(2) is not the relief sought by plaintiffs

---

**6.** *Day v. NLO, Inc.,* 144 F.R.D. 330, 335 (S.D.Ohio 1992) was vacated in part on other grounds in *In re NLO, Inc.,* 5 F.3d 154 (6th Cir.1993).

**7.** The designated district court case number of *Building & Construction Trades Department, AFL–CIO v. Rockwell International Corporation* was 90–B–180, with the case being assigned to Judge Lewis T. Babcock. The related instant case was also initially assigned to Judge Babcock but was later reassigned to me.

**8.** Judge Babcock granted summary judgment for Defendants in *Building & Construction Trades Department, AFL–CIO v. Rockwell International Corporation,* 756 F.Supp. 492 (D.Colo.1991). Plaintiffs appealed after the court denied amendment in *Building & Construction Department,*

*AFL–CIO v. Rockwell International Corporation,* 758 F.Supp. 1428 (D.Colo.1991).

**9.** Plaintiffs sued on their own behalf and as representatives of present and former Rocky Flats employees, but no certification issued before the dismissal of the case. *See Building & Constr. Trades Dep't,* 756 F.Supp. at 493.

**10.** The doctrine of "Prudential mootness" holds that "in some circumstances, a controversy, not [constitutionally] moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Building & Constr. Dep't v. Rockwell,* 7 F.3d at 1491–92 (further quotation omitted).

but whether the crux of the action is for money damages. While recognizing that certification of a medical monitoring class under Rule 23(b)(2) is legally permissible, the court found the district court had not abused its discretion in refusing to certify such a class where the relief sought was primarily monetary damages. *Id. See also Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D.Kan. 1996) (denying certification of a medical monitoring class as the relief sought was primarily money damages).

Since the initial certification opinion, the Tenth Circuit has stated unequivocally that the identical type of medical monitoring relief to that sought here is "essentially for damages." *Building & Construction Dept. v. Rockwell Int'l Corp.*, 7 F.3d at 1492. I am therefore constrained to reverse my previous finding and to conclude that the instant medical monitoring claim seeks primarily money damages. In these circumstances the certification of the medical monitoring class under Rule 23(b)(2) is inappropriate and I hereby decertify that class.

### C. *Requirements of Rules 23(a) and (b)(3).*

■ Because I decertify the medical monitoring class, I consider whether the requirements of Rules 23(a) and (b)(3) are still met with regard only to the Property Class.

#### 1. *Commonality and Predominance.*

Defendants assert this case presents too many individualized issues and no single common course of conduct to satisfy the Rule 23(a)(2) requirement that "there are questions of law or fact common to the class" and the Rule 23(b)(3) requirement that such common questions predominate over any questions affecting only individual members of the class. They maintain each of the five Property Class representatives' claims and the evidence related to them present a highly individualized set of circumstances and this would hold true for each of the more than 15,000 parcels in the class. As concerns the misrepresentation and concealment claims, Defendants assert questions of individual reliance and resultant harm predominate over common issues and the statute of limitations may bar some Plaintiffs but not others.

■ Under the commonality and predominance requirements, the claims of class members need not be factually identical. Indeed, if this were the standard, it would be rare, if even possible, to obtain class certification. *Putnam v. Davies,* 169 F.R.D. 89, 93 (S.D.Ohio 1996). Although some of the facts underlying each Plaintiff's claims may vary, the claims arise from the same set of broad circumstances, the release of hazardous substances from Rocky Flats during its operation by Defendants. Nor do the factual differences create any serious conflict between the representative Plaintiffs and the class members. *See Cook IV,* 151 F.R.D. at 387. Significant elements of Plaintiffs' case in chief relating to tortious releases of hazardous substances will be presented through the testimony of five experts. This testimony will apply to the classes as a whole. Defendants also assert a class-wide defense that·no class-area property contains plutonium in excess of the Colorado standard.

Plaintiffs' factual and legal allegations of liability constitute similar common issues that would be a significant part of any individual case. Although the claims for misrepresentation and concealment involve questions of individual reliance and resultant harm and the statute of limitations defense might bar the claims of some Plaintiffs not others, the commonality of impact of the alleged releases outweighs these variances. I conclude the individual issues do not destroy the commonality and predominance requirements.

#### 2. *Typicality and Adequacy of Representation.*

The same individualized evidence, Defendants maintain, destroys the Rule 23(a)(3) requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Similarly, they aver, the variation in the class representatives' claims creates a tension between their interests and those of the other class members nullifying the Rule 23(a)(4) requirement that they "will fairly and adequately protect the interests of the class."

According to Defendants, the Property Class representatives, four families and one corporation owning relatively large parcels in a mostly undeveloped area near the plant, bear no relationship to the more than 98% of the property owners in the class living on the outskirts of the class area, whose properties have been exposed to much lower levels of Rocky Flats' emissions. Moreover, while the representatives each bought their property in the 1970's, the majority of class members bought their single family homes in the mid–to late–1980's.

■ Under Rule 23(a), the threshold for typicality is low and the claims asserted by the class representative need only be typical of, not identical to, those of other class members. *Cook IV*, 151 F.R.D. at 385. The claims of the Property Class representatives are based on the same legal theories as those brought on behalf of the classes. They will advance the interests of the Property Class because all representatives own property allegedly exposed to hazardous substances due to Defendants' conduct. While it is true that many different types of property exist within the Property Class, all owners of property within the class will seek similar remedies, mainly money damages, for any injury caused to the property from Defendants' alleged releases of harmful substances. The type of property in question is an individual issue that will address the amount of damages available to the claimant rather than the nature of the remedy itself. While the representatives may not be identically situated with all other class members, because they share the same injury and interest of potentially contaminated property, their claims are typical of those of the members of the Property Class. Thus, although the alleged harm suffered by the representatives may differ in degree from that suffered by the other class members and require individual proof, it is essentially of the same type and does not destroy typicality.

■ The class representatives' complete understanding of the legal basis for the claims is not required by Rule 23. *See In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. at 282. I have no reason to doubt the qualifications or experience of Plaintiffs'

counsel nor their capability of conducting the proposed class litigation. I remain of the view that the Property Class representatives' claims satisfy the typicality requirement and that the class is adequately represented.

3. *Superiority.*

Defendants argue the Rule 23(b)(3) requirement applicable to the Property Class certification is not met, namely that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. They maintain recent decisions have focussed on whether claims are "novel" or " immature," and if so, have required a sufficient "track record" of previous trials of those claims before certification can be permitted; and have held the severance of "common issues" from the remainder of the case violates the Seventh Amendment. According to Defendants, the individual issues permeating nearly every aspect of this case would necessitate myriads of "mini-trials" on issues such as exposure, dose, susceptibility to disease, location, lifestyle, contamination, property valuation, notice. This would destroy any purported efficiencies gained from certification. Further, Rule 23 is not satisfied because Plaintiffs have not proposed a structure for trying the case.

Some courts have avoided class actions in the mass accident or tort setting, fearing that differences between individual plaintiffs on issues of liability and defenses of liability, as well as damages, would result in "mini-trials" overshadowing the common disposition for the class. Class certification in this case is, however, superior to the alternative of repeating, hundreds of times over, litigation of common issues. As one commentator has observed: "The case by case mode of adjudication magnifies this burden [of litigating complex issues] by requiring the parties and courts to reinvent the wheel for each claim." David Rosenberg, *Class Actions for Mass Torts: Doing Individual Justice by Collective Means*, 62 Ind.L.J. 561, 563–564, 570–571 (1987) (footnotes omitted) (cited in *In re Copley Pharmaceutical, Inc.*, 161 F.R.D. 456, 466 (D.Wyo.1995)).

While the manageability of the issues in this case will no doubt prove difficult, resolu-

tion of the common issues will materially advance the resolution of the case itself. Significantly, in this instance, there are no apparent conflict of law issues. Moreover, the cost of retaining experts alone demonstrates that none of the property claims could be brought individually. Nor is a track record of prior individual trials as proof of a finding of superiority under Rule 23(b)(3) feasible "if the stakes to each class member were too slight to repay the costs of suit, even though the aggregate stakes were very large and would repay the costs of a consolidated proceeding." *Rhone–Poulenc,* 51 F.3d at 1300. These factors, coupled with the significant complexities and expense incurred in the discovery process to date and extensive motion practice associated with this case, support a finding of superiority of the class action as it relates to the Property Class to other available methods of adjudication. Defendants have failed to adduce evidence sufficient to persuade me that the requirements of Rule 23(a) and (b)(3) are no longer met in relation to the Property Damage Class

### 4. *Adequacy of Class Definition.*

■ In the initial certification decision I rejected Defendants' class definition arguments as largely focusing on the merits of the case. *Cook IV,* 151 F.R.D. at 382–84. Defendants now premise their argument on a misrepresentation of that holding, namely that the class definitions would be fatally inadequate if any person outside of the class area were exposed to hazardous substances released from Rocky Flats because class members could not be differentiated from more distant members of the public. This was not the case. Rather, I held the class must be adequately defined so that those properties located within the property class area, *i.e.,* "the plutonium contour as defined by plaintiffs, can reasonably be said to have been exposed to some hazardous radioactive and non-radioactive materials originating inside the boundaries of Rocky Flats," differentiating them from "more distant members of the public." *Id.* Earlier, Defendants argued the class definitions were over inclusive. Now, they apparently argue they are under inclusive. The fact that properties beyond the contours may have been so exposed does

not render the class definition inadequate. The issue at trial will be whether the evidence shows that the properties within the contours, not without, were so exposed. Any further argument relating to the contours and adequacy of the definition of the Property Class goes to the merits and must await trial. Thus, I deny decertification of the Property Class.

### II. *Dow's Motion for Summary Judgment on Statute of Limitations Grounds.*

■ Dow seeks summary judgment on all claims against it, asserting Plaintiffs' claims are time-barred as they had both constructive and actual knowledge of their claims against Dow outside the applicable limitations period. The instant decision is informed by that of Judge Babcock in which he denied Dow's motion for summary judgment on all claims against it based on the statute of limitations. *See Cook v. Rockwell Int'l Corp.,* 755 F.Supp. 1468, 1482 (D.Colo.1991) ("*Cook I* "). Judge Babcock held, *inter alia,* that both Colorado and the Tenth Circuit apply the same accrual standard in that "the limitations period begins to run when the person suffering legal injury knows or in the exercise of reasonable diligence should have known of the injury and its cause." *Id.* (citing Colo.Rev.Stat. § 13–80–108 and *Ebrahimi v. E.F. Hutton & Co.,* 852 F.2d 516, 523 (10th Cir.1988)). Judge Babcock further held the Price Anderson Act mandates application of state substantive law, that statutes of limitations are substantive, and that "for Plaintiffs' Price Anderson claims, the Colorado statute of limitations specific to each state claim applies." *Id.* He noted it was unclear as to claims arising before July 1, 1986, before the amendment of Colo.Rev.Stat. 13–80–110, whether the former six-year limitations period or the amended period should apply as this question turned on when the claims accrued and "genuine issues of material fact remain as to when the actions accrued." *Id.* at 1482–83. Judge Babcock added, "the record does not establish when plaintiffs knew or should have known that hazardous substances allegedly released while Dow was operating Rocky Flats

reached their property [and therefore] does not establish when plaintiffs knew or should have known of their causes of action." *Id.* at 1483.

In October 1996, in striking Dow's September 20, 1996 motion for summary judgment, I noted it was not on the basis that Judge Babcock had already ruled on the statute of limitations issue, as he had stated there were insufficient facts to make that decision at that time. Dow now contends the factual record developed since Judge Babcock's decision discloses no issue of material fact as to whether Plaintiffs actually knew or should have known of their causes of action.

■ In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). While cases involving statute of limitations defenses frequently lend themselves to summary disposition, a court should not grant summary judgment for the defendant if there is a viable issue of fact as to when the limitations period began. *Id.* If the statute of limitations depends on disputed facts, summary judgment is inappropriate. *Wolf v. Preferred Risk Life Ins. Co.,* 728 F.2d 1304, 1306 (10th Cir.1984); *see also Conmar Corp. v. Mitsui & Co.,* 858 F.2d 499, 500–501 (9th Cir.1988) (finding summary judgment inappropriate where there were genuine issues of material fact as to whether information was available to place a plaintiff on constructive notice of its claims and whether the lack of such information was due to the defendant's fraudulent concealment sufficient to toll the statute of limitations).

"It is settled law in the majority of circuits that the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury." *Maughan,* 758 F.2d at 1387. "Summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue." *Id.* at 1388 (further quotation omitted). Even a diligent plaintiff inquiring into the hazards posed by radiation

> is confronted with a mass of complex, controversial and rapidly changing scientific data and opinions. Lacking the resources and knowledge necessary to carry out their own research into causation, potential plaintiffs must rely on potential defendants—the government and large commercial enterprises—which have the resources to carry out the necessary studies.

*Id.* at 1385. "The leap from a plaintiff's alleged knowledge of the various news articles to actual or constructive knowledge of his or her cause of action involves factual issues which are inappropriate for summary judgment." *Id.* at 1387. I find such leap precludes summary judgment on whether Plaintiffs knew or should have known of the causal connection between the running of Rocky Flats by Dow and their current causes of action.

This case was filed as a Price–Anderson Act "public liability action." [11] That act provides "the substantive rules for decision" in public liability actions "shall be derived from the law of the State in which the nuclear incident involved occurs." 42 U.S.C. § 2014(hh). Thus for Plaintiffs' Price Anderson claims, the Colorado statute of limitations specific to each state claim applies. Plaintiffs assert six causes of action, negligence, strict liability, nuisance, trespass, outrageous conduct, and exemplary damages.

Colorado law currently prescribes a two-year statute of limitations in actions for negligence, strict liability, trespass, nuisance and outrageous conduct. Colo.Rev.Stat. § 13–80–102 (1997). Insofar as Plaintiffs assert claims against Dow accruing on or after July 1, 1986, this period applies. To the extent that such claims accrued before July 1, 1986, they are governed by the Colorado limitations periods in force at the time of the accrual. *Cook I,* 755 F.Supp. at 1483.

---

11. Under the Price–Anderson Act, the term "public liability action" means any suit asserting "public liability," which, in turn, is defined as "any legal liability arising out of or resulting from a nuclear incident." 42 U.S.C. § 2014(w). "Nuclear incident" is defined as "any occurrence ... causing ... bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of [nuclear materials]." 42 U.S.C. § 2014(q).

Before its amendment in 1986, Colorado Revised Statutes § 13–80–110 provided a six-year limitations period for all actions "for waste and for trespass upon land" and for "[a]ll other actions on the case, except actions for slander and libel." Defendants assert even if the six-year limitations period applies, Plaintiffs' claims are time-barred as the motion is based on evidence of notice and actual knowledge that existed before January 30, 1984, six years before the filing of Plaintiffs' complaint.

Judge Babcock has already determined, under the applicable accrual standard, the limitations period begins to run when the person suffering legal injury knows or in the exercise of reasonable diligence should have known of the injury and its cause. *Cook I,* 755 F.Supp. at 1482. Rejecting Dow's argument that pervasive publicity surrounding Rocky Flats would necessarily have put a reasonable person on constructive notice of his or her claims long before even 1984, Judge Babcock stated:

> The crux of the complaint is that because of Dow's tortious behavior, hazardous substances invaded plaintiffs' property and caused damages. Some plaintiffs live as far as six miles from Rocky Flats. The record does not establish when plaintiffs knew or should have known that hazardous substances allegedly released while Dow was operating Rocky Flats reached their property. Thus, the record does not establish when plaintiffs knew or should have known of their causes of action. Accordingly, Dow's motion for summary judgment based on the statute of limitations is denied.

*Id.* at 1483.

Plaintiffs maintain the answer has not changed and the factual question of whether the publicity Dow cites is legally sufficient to uphold a directed verdict in Dow's favor on its statute of limitations defense remains a jury question. Dow persists there is unrebutted evidence that Plaintiffs had sufficient facts to put them on notice of their claims. It maintains Plaintiffs admitted in their depo-

sitions actual knowledge of their claims outside of the limitations period; there are hundreds of newspaper articles from the 1970's reporting the same allegations that Plaintiffs hope to prove here; there are numerous public investigations and reports, many of which Plaintiffs' experts rely on, that demonstrate Plaintiffs' actual and constructive notice; the contamination defining their class was widely publicized beginning February 1970 (the Property Class is defined by a 1970 contamination contour); and Plaintiffs, like those in the *Church* litigation,[12] were on notice of their claims by the early 1970's.

Either actual or constructive knowledge of an action outside the limitations period bars the claim. *Ebrahimi v. E.F. Hutton & Co., Inc.,* 852 F.2d at 520. Dow must prove the legal injury occurred outside the limitations period and Plaintiffs knew or should have known it occurred. This Dow has not done. For example, one element of Plaintiffs' property damage claim is diminution in value. Dow points to no evidence, however, that the diminution occurred outside the limitations period. In fact, its experts deny any diminution attributable to Rocky Flats. According to Plaintiffs' response to Defendants' Statement of Undisputed Facts, and the expert reports cited, plutonium released during Dow's tenure remains in the environment today, and releases and exposures attributable to Dow's misconduct continue to occur and threaten to occur in the future. Moreover, as reflected in many of Dow's exhibits, for many years, all questions about Rocky Flats met with unstinting denials and Panglossian reassurances from the plant operators and from high officials of the state and federal governments. Reasonable class members could have credited these assurances.

Dow cites testimony of certain Plaintiffs which it asserts demonstrates that they had actual knowledge of their causes of action against Dow outside the limitations period. For the aforesaid reasons, however, I find genuine issues of material fact, coupled with complex issues of causation, preclude sum-

---

12. The *Church* lawsuit, filed in the 1970's, also alleged offsite contamination from Rocky Flats. *See Good Fund, Ltd.—1972 v. Church,* 540 F.Supp. 519 (D.Colo.1982), *rev'd sub nom. McKay v. United States,* 703 F.2d 464 (10th Cir. 1983).

mary judgment as to the issue of when such Plaintiffs knew or should have known of the existence of their causes of action.

### III. *Defendants' Combined Motion for Summary Judgment.*

■ Plaintiffs' trespass and nuisance ("property damage") claims are for diminution in value of their properties allegedly caused by contamination of the properties through the deposit of plutonium and other hazardous substances upon the surface of Plaintiffs' properties. Dow and Rockwell seek summary judgment on these claims which, they assert, fail as a matter of law because they are based merely on the publicity and the controversy generated by the 1989 FBI raid of Rocky Flats. Plaintiffs maintain these claims are based on diminution in value of their properties caused by contamination attributable to Dow and Rockwell, rather than by stigma and public perception.

■ Trespass is "the physical intrusion upon property of another without the permission of the person lawfully entitled to the possession of the real estate." *Burt v. Beautiful Savior Lutheran Church,* 809 P.2d 1064, 1067 (Colo.Ct.App.1990). Stated otherwise, it is "any entry upon, under, or above the surface of the real estate of another without the permission or invitation of the person lawfully entitled to possession of the real estate." *Denver & Rio Grande W.R.R. Co. v. Forster,* 773 P.2d 612, 613 (Colo.App.1989).

Defendants argue Plaintiffs cannot satisfy the requirement of a physical invasion of and entry upon property, because their trespass claim is based on stigma and public perception, nor can Plaintiffs satisfy the element of causation. Plaintiffs assert a prima facie case of trespass exists against both Dow and Rockwell in that each engaged in conduct which resulted in the entry and deposition, without permission, of plutonium and other hazardous substances upon the surface of Plaintiffs' properties.

■ "Private nuisance is a non-trespassory invasion of another's interest in the private use and enjoyment of his land." *Allison v. Smith,* 695 P.2d 791, 793–94 (Colo.App.

1984). "[A] plaintiff must show that the defendant unreasonably and substantially interfered with the use and enjoyment of his property." *Id.* at 794. This involves a factual determination concerning "[w]hether the various factors of interference asserted by the plaintiffs as to their use and enjoyment of their home were a substantial invasion of their interests as measured by the standard of their effect upon a normal person in the same or similar circumstances." *Id.*

> There are countless ways to interfere with the use and enjoyment of land including interference with the physical condition of the land itself, disturbance in the comfort or conveniences of the occupant including his peace of mind, and threat of future injury that is a present menace and interference with enjoyment. The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question. It involves "not only a defect, but threatening or impending danger ... to the property rights or health of persons sustaining peculiar relations to the same...."

■ *Adkins v. Thomas Solvent Co.,* 440 Mich. 293, 487 N.W.2d 715, 719 (1992) (further citations omitted). In Colorado, too, an actual threat to health and safety is a legally cognizable harm. *Boryla v. Pash,* 960 P.2d 123, 128–29 (Colo.1998) (discussing the principles applicable to the evaluation fear of cancer claims in medical malpractice cases and toxic exposure cases).

Defendants argue Plaintiffs cannot prove, as required, that Defendants unreasonably and substantially interfered with the use and enjoyment of their property. Plaintiffs maintain, by creating an impending threat to their health, safety and property, through physical invasion of their land, and the resultant property stigmatization and loss in value, Defendants have disturbed their reasonable comfort in occupation of their property.

I find genuine issues of material fact exist in the record to date as to the actual physical invasion of Plaintiffs' land through contamination emanating from Rocky Flats as well as to the severity and impact of the threat from contamination emanating from the

plant. These complex issues of causation preclude summary judgment both on the trespass and nuisance claims.

## IV. Class Plaintiffs' Motion for Partial Summary Judgment

 Plaintiffs seek summary judgment on the following points: (1) Defendants' operation of Rocky Flats constituted an abnormally dangerous activity rendering them strictly liable for all harm resulting from that activity; (2) Defendants' operation of Rocky Flats involved conduct so dangerous to life and property and so abnormal and out of place in its surroundings as to constitute an absolute nuisance, resulting in their being strictly liable on the nuisance claims; (3) Rockwell committed those acts to which it pleaded guilty in *United States v. Rockwell Int'l Corp.*, No. 92–CR–107 (D.Colo.).[13]

 In Colorado, one who engages in abnormally dangerous activity is strictly liable for any damages proximately caused to other persons, land, or chattels by that activity. *Garden of the Gods Village v. Hellman*, 133 Colo. 286, 294 P.2d 597 (1956); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1544–45 (10th Cir.1992). It is the function of the court to determine whether an enterprise is abnormally dangerous. *Restatement of Torts (Second)* § 520 comment (1). Factors to be taken into account include the existence of a high degree of risk of harm to the person or land of others, the likelihood that the resultant harm will be great, and an inability to eliminate the risk by the exercise of reasonable care. These factors require "a particularized inquiry" into the activity alleged to be "ultrahazardous" or "abnormally dangerous."

*Daigle*, 972 F.2d at 1544 (commenting that to impose an inflexible strict liability rule even on an activity such as blasting without consideration of the circumstances would be incorrect).

 Here, Plaintiffs do not set out relevant undisputed facts warranting a ruling that the activities of Defendants at Rocky Flats were abnormally dangerous. Rather, they rely on cases which have held that processing, use and storage of radioactive materials are abnormally dangerous activities. *See, e.g., Silkwood v. Kerr–McGee Corp.*, 667 F.2d 908 (10th Cir.1981), *rev'd on other grounds*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (concluding that the processing of plutonium at a nuclear fuel plant was an abnormally dangerous activity).

 Similarly absolute nuisance exists in "those nuisance situations which result from abnormal and unduly hazardous activities" or "where the defendant's pursuit of its own purposes on its own land is clearly an unreasonable act in view of surrounding circumstances." *Northwest Water Corp. v. Pennetta*, 29 Colo.App. 1, 479 P.2d 398, 401 (1970). Both alternatives involve factual issues not canvassed by the Plaintiffs. *See id.* (holding that whether the defendants' use of the water tank alleged to constitute an absolute nuisance was unreasonable in relation to its location was a fact question for the jury). Because Plaintiffs have not shown an absence of any genuine issue as to any material fact regarding the issues of strict liability and absolute nuisance, summary judgment on these issues is inappropriate.[14]

---

13. I reject Defendants' argument that Plaintiffs' motion is procedurally defective in that, contrary to the dictates of Rule 56, it does not seek to resolve any single claim in the lawsuit in its entirety. Rule 56(a) provides a party may seek summary judgment upon "all or part" of a claim. Additionally, Rule 56(d) states a court may "make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly." Fed.R.Civ.P. Rule 56(d). "[I]t is now well established that a court may 'grant' partial summary 'judgment' that es-

tablishes the existence or nonexistence of certain facts, even though no actual judgment is entered on a claim." 11 J. Moore, *Moore's Federal Practice* ¶ 56.40[2] at 56–279 (3d ed.1998) (footnote omitted). "A partial summary judgment ruling may dispose of only a single issue relevant to a claim.... In availing itself of the ability granted by Rule 56 to issue orders which resolve significant questions, a court can focus the litigation on the true matters in controversy." *Id.* at 56–280 to 56–281.

14. I do not reach Defendants' argument that the 1988 amendments to the Price–Anderson Act preclude state law strict liability claims nor that they cannot be held strictly liable for conducting

I also deny Plaintiffs' request for a ruling that Rockwell committed those acts to which it pleaded guilty in *United States v. Rockwell International Corporation,* No. 92–CR–107 (D.Colo.). *See McCormick v. United States,* 539 F.Supp. 1179, 1183 (D.Colo.1982) (holding a guilty plea admissible in a subsequent civil action as an admission but denying "the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action").

V. *Defendants' Motion for Summary Judgment Based on Expert Discovery (filed August 5, 1997) and Class Plaintiffs' Motion to Strike.*

■■■ Dow and Rockwell seek summary judgment on the grounds that the undisputed evidence shows (1) Defendants complied with applicable federal standards governing releases of nuclear materials, thus entitling them to summary judgment on all claims brought under the Price Anderson Act; (2) Plaintiffs have not met their baseline burden to demonstrate significant exposure or risk as required to sustain their medical monitoring claims; and (3) Plaintiffs have not adduced evidence sufficient to sustain their nuisance and trespass claims. On August 29, 1997, Defendants' Motion to Strike Plaintiffs' Experts was filed, seeking to strike as inadmissible and irrelevant the expert evidence upon which Plaintiffs base their opposition to Defendants' Motion for Summary Judgment. On November 6, 1997, in response to these motions, Class Plaintiffs' Motion to Strike Defendants' Fifth Wave of Dispositive Motions and Defendants' Related Motion to Strike Plaintiffs' Experts was filed.

Plaintiffs seek to strike Defendants' Motion for Summary Judgment filed August 5, 1997 and Defendants' motion to strike all testimony by all of Plaintiffs' experts filed August 29, 1997 as untimely and noncompliant with the court's December 1996 deadline. They set out the complex procedural and motions history of the case and cite my remarks at the status conference held on October 2, 1996. On that date, I reluctantly

vacated the January 21, 1997 trial date. I struck Defendants' then pending motions without prejudice and set "a deadline of December 1, 1996 for the defendants to file whatever motions you want, consolidated." (Status Conference Tr. Proceedings, Oct. 22, 1996 at 4.) I iterated, "December 1 is a deadline for all motions, any and all motions that go to the merits of the litigation." (*Id.* at 6.) Counsel representing Dow stated: "I want to make sure that we comply with Your Honor's concern about motion practice. We have a statute of limitations motion for summary judgment. There's going to be a property summary judgment motion that we refer to in our papers, and I clearly understand the Court's injunction to file those by December 1." (*Id.* at 22.)

Nevertheless, on August 5, 1997, eight months after the deadline, Defendants, without seeking leave, filed three additional motions for summary judgment. Apparently cognizant of the motions' untimeliness, Defendants assert the motions are reliant on the deposition testimony of Plaintiffs' experts taken between December and May of 1997. They do not deny that they had possession of Plaintiffs' expert reports as of the December 1996 deadline but maintain they could not have filed the motions for summary judgment based on the experts' opinions within eight business days after receiving the voluminous reports.

In light of the clear order at the October 22, 1996 status conference, I strike Defendants' summary judgment motions filed on August 5, 1997.

VI. *Defendants' Motion to Strike Plaintiffs' Experts (filed August 29, 1997) and Class Plaintiffs' Motion to Strike.*

■■■ Defendants seek to strike Plaintiffs' "three core experts," Robert Goble, John Radke and Wayne Hunsperger on the grounds that their opinions in their reports and depositions do not meet the standards for the admissibility of expert testimony. They also seek to strike as irrelevant Plaintiffs' remaining experts. In doing so, Defen-

an abnormally dangerous activity because *Restatement (Second) Of Torts* § 521 (1077) pre-

cludes such liability for the "pursuance of public duty."

dants anticipated that Plaintiffs would rely on such testimony in responding to the August 29, 1997 summary judgment motions. Plaintiffs, however, in response to those motions and this motion to strike, filed their own Motion to Strike Defendants' Fifth Wave of Dispositive Motions and Defendants' Related Motion to Strike Plaintiffs' Experts. At this time, therefore, Plaintiffs have neither offered nor relied upon the testimony of their experts. Until such time as they do so, I decline to determine the admissibility of the extensive and technically complex testimony and strike Defendants' motion in this regard. *See United States v. Nunez,* 658 F.Supp. 828, 839 (D.Colo.1987) (holding "[t]his court is not required to determine the admissibility of evidence until it is offered").

VII. *Defendants' Motion under Rule 37(c)(1) to Preclude Testimony of Plaintiffs' Expert Witness, Dr. John Radke, based upon findings of Magistrate Judge Borchers that Plaintiffs have violated Rule 26(a)(2) (filed April 21, 1998).*

On March 31, 1998, Magistrate Judge Borchers entered an order, *inter alia,* granting in part and denying in part Defendants' motion to compel the production of material relied on by John Radke, Ph.D. Plaintiffs retained Dr. Radke to examine the property values of land and buildings near Rocky Flats. Dr. Radke completed his report in 1996 entitled "Measuring the Effects of Proximity to the Rocky Flats Nuclear Weapons Plant on Property Values." He is one of five experts designated by Plaintiffs to support their allegation that real estate in the class diminished in value as a result of proximity to Rocky Flats. After receiving Dr. Radke's report, counsel for Defendants requested documentation and information used in its preparation. Various communications took place and, while Plaintiffs provided some materials, no resolution was reached in relation to certain requests.

Dr. Radke's deposition commenced on March 31, 1997. Defendants filed their mo-

tion to compel together with requests for a protective order to preclude the deposition of Daniel McFadden, Ph.D. until Plaintiffs produced all requested documents and for sanctions and attorney fees. The magistrate judge denied the motion insofar as it sought to compel certain requested computer files, X–Y coordinates, dates of transactions used in "Phase 1" and "Phase II," and output from regressions, on the grounds that such data did not exist. He stated in relation to the dates of transactions used in "Phase I" and "Phase II,": that if I were to conclude that certain information underlying the results of Dr. Radke did not exist, and that his work could not be replicated, I might preclude the admission of results. The magistrate judge deferred the request for sanctions under Fed.R.Civ.P. 37, stating they were available only where the court found there to have been a violation of a discovery order. In light of the non-existence of the material sought and the resultant denial of the major part of the motion to compel, a sanction under Rule 37 was "not available at this time." (Mem.Op. & Order March 31, 1998 at 9.)

Defendants now seek to preclude the use of Dr. Radke's testimony at trial or in responding to summary judgment motions. They assert the magistrate judge made all findings necessary to determine that Plaintiffs, without substantial justification, have failed to disclose information as required by Rule 26, thus triggering the automatic preclusion sanction of Rule 37(c)(1).[15]

■■■ Defendants correctly point out that Rule 37(c)(1) precludes the use of undisclosed evidence "at trial, at a hearing, or on a motion." They cite the Tenth Circuit's observation that "a trial court should determine whether an expert's testimony would be admissible at trial before considering that testimony in ruling on a motion for summary judgment." *Powell v. Fournet,* 1992 WL 150085 at *2 (10th Cir. June 25, 1992). Plaintiffs have not, however, yet sought to rely on Dr. Radke's evidence "at trial, at a hearing, or on a motion." Accordingly, I

---

**15.** Thus, Defendants seek to strike Dr. Radke's opinion both in this motion (for failure to comply with Rule 26) and in their August 29, 1997 mo-

tion (based on lack of qualification and the resulting methodological errors in his report).

deny Defendants' motion to preclude such testimony.[16] *See United States v. Nunez,* 658 F.Supp. at 839.

## VIII. *Conclusion.*

For the aforesaid reasons, I grant Defendants' motion for decertification of the Medical Monitoring Class, but deny it as regards the Property Class. Accordingly,

IT IS ORDERED THAT Defendants' Motion for Class Decertification is GRANTED with regard to the Medical Monitoring Class, which is hereby decertified, and is DENIED with regard to the Property Class;

IT IS FURTHER ORDERED THAT Dow's motion for summary judgment on statute of limitations grounds is DENIED;

IT IS FURTHER ORDERED THAT Defendants' Combined Motion for Summary Judgment on Plaintiffs' trespass and nuisance claims is DENIED;

IT IS FURTHER ORDERED THAT Class Plaintiffs' Motion for Partial Summary Judgment is DENIED;

IT IS FURTHER ORDERED THAT Plaintiffs' Motion to Strike Defendants' Fifth Wave of Dispositive Motions and Defendants' Related Motion to Strike Plaintiffs' Experts is GRANTED;

IT IS FURTHER ORDERED THAT Defendants' Motion for Summary Judgment based on Expert Discovery and Defendants' Motion to Strike Plaintiffs' Experts are STRICKEN;

IT IS FURTHER ORDERED THAT Defendants' Motion under Rule 37(c)(1) to Preclude Testimony of Plaintiffs' Expert Witness, Dr. John Radke is DENIED;

IT IS FURTHER ORDERED THAT Plaintiffs shall file a revised Class Notice consistent with this opinion on or before August 20, 1998.

---

**16.** The facts relied on and relief sought in this motion are identical to the facts considered and the relief denied by the magistrate judge. Defendants' more appropriate course of action would have been to seek reconsideration or to file an objection to the magistrate judge's denial of Rule 37(1) sanctions.